# HENRY W. SCOVILL AND ANOTHER *vs.* LAWRENCE S. McMAHON, BISHOP.

New Haven & Fairfield Cos., Oct T., 1892. ANDREWS, C. J:, TORRANCE, FENN and F. B. HALL, Js.

*S* in 1847 conveyed by warranty deed a piece of land in Waterbury to "William Tyler, Bishop of the Roman Catholic diocese of Hartford, in trust for the Roman Catholics of Waterbury," the deed containing the following provision:—"Provided that the premises are to be used for a burying ground and for no other purpose, and that the grantee, his successors and assigns, shall at all times maintain a good and sufficient fence around the premises." The land was used for a cemetery by the Catholics of Waterbury until 1882, when it had become filled with graves and was a public nuisance, and the legislature in that year passed an act forbidding further interments in it, and giving the city of Waterbury the right, upon certain proceedings to be had in the Superior Court, to have the bodies removed, and the land made a public park. The land was appraised by a committee of the court at $12,500, and a decree was passed directing the city to pay this sum to the defendant, bishop of the diocese of Hartford, "to be held by him subject to all trusts and interests which are or may be found to be created and reserved in the deed of *S.*" No fence had ever been built around the land, but no demand for one had been made by *S* or his heirs, while they had, without objection, for forty-five years seen interments made in the lot. There was no provision in the deed for a forfeiture if the fence was not maintained. The heirs of *S* having entered for condition broken, brought suit against the defendant, claiming the fund. Held—

1. That if the provision as to a fence was to be construed as a condition subsequent, the plaintiffs might be justly held to have waived their right or to have lost it by their own laches.

2. But that conditions subsequent are not favored in law and courts will always construe such provisions in deeds as covenants rather than con-

ditions if they can reasonably do so, and especially if it be doubtful what was intended.

3. And where apt words for the creation of a condition subsequent are employed, yet, in the absence of an express provision for re-entry or forfeiture, the court will, from the nature of the acts required or prohibited, from the situation and relations of the parties, and from the entire instrument, determine the real intention of the parties.

4. That in this case it could not be regarded as the intention of the original parties that the land, while in use as a cemetery, should revert to the grantor on the failure of the grantee to maintain a fence; and that the provision was to be regarded as a covenant and not as a condition subsequent.

5. That, assuming that the provision that the land should be used for a cemetery, and only as such, created a condition subsequent, the act of the legislature prohibiting further interments in the lot did not constitute a breach of the condition which would work a forfeiture of the defendant's title.

6. That this act was a lawful exercise of the police power of the state, and by it the condition of the deed was destroyed and the title vested absolutely in the defendant.

7. That the prohibition of interments having destroyed the plaintiff's right to take advantage of the condition, it did not affect the case that the legislature gave the further right to the city to take the land for a park.

8. That forbidding the use of the land for a cemetery was not à taking of it for public use within the meaning of the constitution.

9. That the plaintiffs were not entitled to the fund in the defendant's hands, nor to an apportionment of it with him.

[Argued October 26th—decided November 21st, 1892.]

SUIT to recover a trust fund in the hands of the defendant, a Roman Catholic bishop, being the amount paid by the city of Waterbury on an appraisal of land that had been held by the bishop as a Catholic cemetery, and which was taken by the city for a public park; brought to the Superior Court in New Haven County. The defendant demurred to the complaint, and the court (*J. M. Hall, J.,*) sustained the demurrer and rendered judgment for the defendant. The plaintiffs appealed. The case is fully stated in the opinion.

*L. F. Burpee* and *G. D. Watrous,* for the appellants.

1. Does the deed create a trust? The only basis for this claim seems to be that the grantee is described as " William Tyler, Bishop of the Roman Catholic Diocese of Hartford,

in trust for the Roman Catholics of Waterbury." In no operative part of the deed is there any reference to any trust or trustee; the habendum clause would be the proper place for the declaration of a trust if there were one. No trust estate is created; no trust is declared; nor is there anything which manifests any intention to benefit the Catholics of Waterbury or to impose upon the grantee any duties with reference to them. The trust relationship is not created by the deed. It has its origin in the laws of the church and not in those of the state or in the intention of the grantor. It is as if the bishop had been described as bishop or as agent. At that time the bishop was the person designated by the laws of the church to hold the title to all property devoted to religious purposes. In these respects this case differs radically from those of *Episcopal City Mission* v. *Appleton*, 117 Mass., 326, and *Rawson* v. *School District in Uxbridge*, 7 Allen, 125, cited by the defendant below. The grantor did not reserve, directly or by implication, any right to insist that the land should be used as a cemetery.

2. Does the deed create a fee-simple estate? The claim that the grantor intended to part with his whole interest, or did so, is preposterous. In the first place, out of a thousand possible uses to which the land might be put, the grantee is limited to one. Does it not follow that if the land could be put to any other use at the same time not inconsistent with the one granted, the grantor might so use it? If valuable minerals existed deep below the surface, and the grantor could mine them, by tunneling under from his own land, could he not do so? Did he intend that if the use for a burial ground should cease, the grantee should have the land and the right to use it for any purpose he pleased. If so, why did he not merely give an ordinary deed? Why express so carefully his wishes in the form of a condition? In support of this claim, the defendant relies upon the cases of *Wilson* v. *Peck*, 39 Conn., 54; *Rawson* v. *School District in Uxbridge*, 7 Allen, 125; *Sohier* v. *Trinity Church*, 109 Mass., 1; and *Episcopal City Mission* v. *Appleton*, 117 id., 326. But, unlike the leading facts in

those cases, the grantor here shows no general intent to benefit the grantee. He shows the most decided purpose not to permit the land to be used for any other than burial purposes. His clear intention is that so long as it is so used, well and good. If not so used all right of the grantor ceases.

3. Is the clause in dispute a covenant? It is true that courts have often, when impelled by clear evidence of the grantors' intent, held that similar language amounted to a covenant, and that equity would restrain a breach, and law award damages in case one had taken place. Such a case was *Avery* v. *N. York Cent. R. R. Co.*, 106 N. York, 142. Here the grantor owned a hotel, and conveyed land to a railroad company. There was a ready means of access from the station to the hotel over the land in question and the value of the hotel property was greatly enhanced thereby. The deeds contained this clause:—" This conveyance is upon the express condition that the said railroad company, their successors or assigns, shall at all times maintain an opening into the premises hereby conveyed, opposite to the Exchange Hotel," for access, etc. In this and numerous other cases, such a clause has been held a covenant, because in spite of the technical terms employed, the unquestionable intent of the grantor was to benefit his adjoining property by annexing to it certain privileges which should run with the land and inure to the benefit of whoever might be the owner. This clause is certainly not a covenant.

4. Does the deed create an easement for burial purposes? We contend that it creates either an easement, or an estate upon condition subsequent, or a determinable fee. In case the court shall adopt either of these views, we contend that the grantor or his heirs have an interest which could not be taken away by the state without compensation. In a great many cases it has been held that a deed of land for burial purposes constitutes the grant of an easement. *Kincaid's Appeal*, 66 Penn. St., 411; *Sohier* v. *Trinity Church*, 109 Mass., 1; *Jones* v. *Towne*, 58 N. Hamp., 462. If the deed conveyed the easement and that easement has not been extinguished, then both the owner of the land and of the

easement are entitled to compensation if both be taken for public purposes, and apportionment must be made in proportion to the value of the interest of the owners of the land and of the easement. This proposition needs no citation of authorities. If the easement has been lost by abandonment or extinction, the whole fund belongs to the heirs of the grantor.

5. Does the deed create an estate upon condition subsequent? The principal contention made by the plaintiffs below was that the deed did create such an estate; that there had been a breach of condition and forfeiture; and that a sufficient entry had been made by the heirs of the grantor. Four different breaches were suggested in argument and an actual entry and notice to the bishop was sufficiently alleged in the complaint. If before the completion of. the taking by the payment of the $12,500 to the bishop, the plaintiffs made a sufficient entry for the breach of a condition subsequent, they are of course entitled to the whole fund. But even if no sufficient breach and re-entry occurred, the heirs-at-law of the grantor have at least *some* interest, enough to maintain this suit. Even a possibility of reverter, as the common law puts it, has some value, and under our statute this right of reversion is an estate, capable of conveyance, and with a money value. *Hoyt* v. *Ketcham*, 54 Conn., 60. With a piece of property situated as this was, the value of this interest must be considerable. Neither party could, without the consent of the other, use the land in any way so as to obtain anything like its actual value. By uniting in a conveyance they could have sold it for a price which would· be many times what it was worth to either before. The state stepped in and in effect compelled a sale of their united interests, whereby the market value was realized. The benefit of this ought to be shared by each. It is true that conditions subsequent are not favored in the law, but in this deed the grantor has manifested his purpose by using two of the strongest terms known to the law for creating a conditional estate, "provided" and "upon condition that." The claim that a clause of re-entry or for-

feiture is necessary to constitute a condition is met by Tiede-man on Real Property, § 277, and cases cited. " The right of entry need not be reserved where the condition is ex-pressed. It follows as a necessary incident of the condition." *Gray* v. *Blanchard*, 8 Pick., 291. Three breaches of the con-ditions of this deed are relied upon and distinctly set forth in the complaint.—1st. By the neglect of the successor of Wil-liam Tyler to use and occupy the premises according to the expressed intent of the deed, and the abandonment of that use prior to the condemnation proceedings.—2d. By the failure to erect and maintain a fence as required by the deed. The defendant says that to establish a breach of this kind it is necessary to show a demand for the maintenance of the fence and a refusal. The authorities do not sustain this proposition, except one cited by the defendant, in which the language of the deed was " neglect and refuse." The word " refuse " of course implies a prior demand. Nor has the right of entry been barred by time. The duty is to " at all times maintain, build, and keep a good and sufficient fence." The duty to maintain and keep is a continuing one.—3d. By the removal of the monuments and bodies pursuant to the decree of the court and the act of the legis-lature. From the act (Acts of 1882, p. 677), it appears that this order, which subsèquently declares the cemetery to be a public nuisance, was in consequence of the actual prior abandonment and neglect. It is not an act of the law in the sense in which that term is used in the law of contracts and conditions ; it is a consequence brought upon the bishop because of his very abuse of the estate given by the deed, and the breach of the condition. To permit him to plead this as an excuse would be to permit him to take advantage of his own wrong. This order to discontinue the cemetery and remove a nuisance is an exercise of the police power, and not to be confounded with the exercise of the right of eminent domain provided for in the same act. *So-hier* v. *Trinity Church*, 109 Mass., 1; *Kincaid's Appeal*, 66 Penn. St., 411.—4th. A fourth breach might be added, namely, the taking by the exercise of the right of eminent domain.

- 6. Does the deed create a determinable fee, with possibility of reverter in the grantor and his heirs? This one further possible construction of the deed remains; a construction which will avoid many of the difficulties inevitable to most of the others and which will render possible a decision in consonance with that which natural justice would require. Blackstone divides limited fees into qualified or base fees (also called determinable fees) and fees conditional at common law, which afterward developed into fees-tail. 2 Black. Com., 109. Of these there are several forms:—1, fees upon condition; 2, fees upon limitation; 3, conditional limitations. In the first form (already discussed) an entry for condition broken is necessary; in the third the estate determines *ipso facto* on the happening of the contingency and there is a limitation over; in the second the estate determines *ipso facto* and reverts to the grantor. Another subdivision of limited estates is a "collateral limitation," described by Kent (4 Com., 129,) as follows:—"It gives an interest for a specified period, but makes the right of enjoyment to depend on some collateral event, as a limitation of an estate to a man and his heirs, tenants of the manor of Dale, or to a woman during widowhood, or to *C* till the return of *B* from Rome, or until *B* shall have paid him twenty pounds. The event marked for the determination of the estate is *collateral* to the time of continuance. The estate will determine as soon as the event arrives, and it can never be revived." To construe the deed in this way would not only carry out the manifest intent of the grantor, but would be in harmony with well-settled rules of law. The grantor certainly intended that the estate of the grantee should cease when the land ceased to be used for a burying ground. The cause of cessation was of no interest to him, nor is it to the law. If brought about as a penalty for abuse of the estate granted, *a fortiori* should the estate determine. If the state has without justification deprived the grantee of the right to use the land for that purpose, he should be compensated, and the measure of his compensation should be the value of the right of which he has been

Scovill v. McMahon.

deprived. Every other interest belongs to the grantor's heirs and they should receive the balance of the sum awarded. Courts have repeatedly held deeds, similar in terms to this, to give a determinable fee. 2 Bla. Com., 110, 155; 4 Kent's Com., 9, 129; 1 Washb. R. Prop., 88; *McLane* v. *Bovee*, 35 Wisc., 26, 36; *People* v. *White*, 11 Barb., 28; *Wiggins Ferry Co.* v. *Ohio & Miss. R. R. Co.*, 94 Ill., 93; *State* v. *Brown*, 27 N. J. Law, 13; *Jamaica Pond Corp.* v. *Chandler*, 9 Allen, 159; *Universalist Society of North Adams* v. *Boland*, 29 N. E. Reporter, 524. In conclusion, we respectfully submit that the grantee took either an easement, an estate upon condition, or a limited estate. Whichever of these he took, the grantor and his heirs now have an interest in the fund which represents the land, and the demurrer should have been overruled.

*W. W. Hyde* and *F. E. Hyde*, for the appellee.

F. B. HALL, J. The plaintiffs by this action seek to recover the whole or a part of the sum of $12,500, held by the defendant under a judgment of the Superior Court. The material facts alleged in the complaint, to which the defendant demurs, are as follows:—

The plaintiffs represent the heirs of one J. M. L. Scovill, who, in 1847, by warranty deed with the usual covenants, conveyed to William Tyler, bishop of the Roman Catholic diocese of Hartford, his successors and assigns, in trust for the Roman Catholics of Waterbury, a tract of land in Waterbury containing one acre. The deed contained the following provision:—"Provided, and this deed is upon the condition, that the above described premises are to be used and occupied for the purpose of a burying ground, and no other purpose; and that the grantee, his successors and assigns, shall at all times maintain, build and keep a good and sufficient fence around said premises."

Since said date this land has been used and occupied by the grantees as a cemetery for the burial of Roman Catholics, until the removal of all the bodies and monuments by

the city of Waterbury under the legislative act hereafter
referred to. No interments have been made in this land
since 1880. No fence has ever been built around the prem-
ises.

In 1882, by a special act of the legislature, the preamble
of which recited that this and other old cemeteries within
the city of Waterbury had long ceased to be used as places
of interment, that they had been in a neglected condition,
and that, from the growth of the city and from other causes,
they were no longer proper places for cemeteries, it was
provided that, from and after the date of the act, it should
be unlawful to make any interment in said burying ground.
This act further provided that, upon the petition of the city
of Waterbury, the Superior Court might order the removal
by the city of the bodies and monuments from the ceme-
tery ; and, after prescribing the manner of ascertaining the
owners of the land and the value of their respective inter-
ests therein, provided that, upon payment to the owners of
the sums decreed by court as the value of their respective
interests, the burial ground should become a public park in
the city of Waterbury, and that the same might be used for
any suitable public building or other public purpose.    9
Conn. Special Laws, 677.

After a hearing before a committee appointed upon the
petition of the city of Waterbury under this act, it was de-
creed by the Superior Court, January 2d, 1891, that when
the city of Waterbury should pay to the defendant the sum
of $12,500, said sum having been found to be the value of
the land in question, and should remove the remaining
bodies and monuments from the burying ground, the same
should become a public park in said city and be used. for
any suitable public building or other public purpose.    By
the judgment of the Superior Court this sum of $12,500
was to be held by Bishop McMahon "subject to all trusts,
claims and interests which are or may be found to be created
and reserved in the deed of J. M. L. Scovill." The heirs
of J. M. L. Scovill were represented at the hearing before
said committee, but no claim was then made in their behalf.

On the 30th of January, 1891, Henry W. Scovill, one of the plaintiffs, in behalf of said heirs, made entry upon the land for condition broken.

The city of Waterbury has complied with the require-ments of the act referred to, and, on the 18th of May, 1891, paid to the defendant the sum of $12,500, which is held by him in conformity to the terms of said judgment.

By their appeal from the decision of the Superior Court sustaining the defendant's demurrer to the complaint, the plaintiffs claim that there has been a breach of the condition of the deed of Scovill to Tyler, by which the title to the land described in the deed has become forfeited, and that they are thereby entitled to the whole of the sum in the hands of the defendant, as that sum represents the value of the land; that if these facts do not show a breach of the condition of the deed revesting the title in the plaintiffs, they are still entitled to some part of the fund in the de-fendant's hands as a compensation for the loss of the right which they possess to re-enter upon condition broken, and which right or interest in the land they say has been taken from them by act of the legislature without compensation.

Of the alleged breaches of condition there are but two which we need to consider:—first, that which it is claimed resulted from the failure to maintain a fence; second, that which it is said was effected by the act of the legislature prohibiting the use of the land as a place of burial, and by the removal of the bodies and monuments by the city pur-suant to the act.

The alleged right to re-enter for failure to maintain a fence accrued about forty-five years ago, as the record shows that the grantees have never built a fence around the prem-ises. During this period of forty-five years there has appar-ently been no demand made, either by the grantor or his heirs, for the erection of a fence. During this period the grantor and his heirs have silently permitted interments to be made and monuments to be erected until this tract was filled with graves. Indeed, the silence of the grantor and his heirs respecting their claimed right to re-enter for fail-

ure to erect a fence seems never to have been broken until the sum of $12,500 was placed in the defendant's hands by order of the court.

If the clause in question were to be construed as creating a condition subsequent, we think, upon these facts, the plaintiffs may be justly held either to have waived their right or to have lost it by their own laches. A right of entry may be so waived and lost. 2 Washb. R. Prop., 18; *Guild* v. *Richards*, 16 Gray, 309; *Andrews* v. *Senter*, 32 Maine, 394; *Ludlow* v. *N. York & Harlem R. R. Co.*, 12 Barb., 440; *Merrifield* v. *Cobleigh*, 4 Cush., 178.

But we are not willing to be understood as assenting to the plaintiff's claim that the provision requiring the erection of a fence constitutes a condition subsequent. The law is well established that such conditions are not favored, and are created only by express terms or by clear implication; that courts will always construe clauses in deeds as covenants rather than conditions if they can reasonably do so; that if it be doubtful whether a clause in a deed imports a condition or a covenant the latter construction will be adopted; and that, though apt words for the creation of a condition are employed, yet, in the absence of an express provision for re-entry or forfeiture, the court, from the nature of the acts to be performed or prohibited by the language of the deed, from the relation and situation of the parties, and from the entire instrument, will determine the real intention of the parties. 2 Washb. R. Prop., 4, *et seq.; Post* v. *Weil*, 115 N. York, 361; *Hoyt* v. *Kimball*, 49 N. Hamp., 327; *Episcopal City Mission* v. *Appleton*, 117 Mass., 326; *Stanley* v. *Colt*, 5 Wall., 119.

As it is clear from the language used in this deed that the grantor intended the land to be used for a cemetery and for no other purpose, and as apt words for the creation of a condition are employed, it is a reasonable inference under all the circumstances that the grantor intended that the property should revert if the grantee failed to use it for the purpose for which it was conveyed; but, in the absence of any express provision for re-entry or forfeiture, we think it

Scovill v. McMahon.

is not unreasonable to conclude that the parties did not intend that, while the land was in use as a place of burial and while it was filled with graves and monuments, it should revert to the grantor upon the failure of the grantee to maintain a fence. The description of the property shows that the grantor owned the land on two sides of the lot conveyed. He evidently desired to relieve himself from the burden of maintaining any part of the fence and to impose the duty upon the grantee of building all the fence enclosing the premises. This, we think, was his entire purpose, and that this provision should be construed as a covenant and not as creating a condition subsequent.

Assuming that the provision in the deed that the land should be used for the purpose of a burying ground and for no other purpose created a condition subsequent, did the act of the legislature forbidding further interments in the place and providing for the removal of the bodies and monuments which remained there, constitute a breach of condition which would work a forfeiture of the defendant's title? If this question is to be answered in the affirmative, the plaintiffs, assuming that they had made the required reentry, should receive the entire sum in the hands of the defendant, as that sum represents only the value of the land; while the defendant, who, without fault, has not only been deprived of the right to use this land as a place of burial, but has also lost his title to the land itself, will receive no compensation.

If the condition of the deed is broken and the title reverts from the act of the legislature, it would seem, from the claims made by the plaintiffs, that not only should they be reimbursed for the full value of the land taken from them by the city of Waterbury, but that the defendant should be paid the full value of the right and title of which he has been deprived by the state, and which might be equal to the full value of the land.

We think the law is not as contended for by the plaintiffs; and that, the grantee having used the land for a place of burial and for no other purpose, when the state, in the

proper and reasonable exercise of its police power, by a valid act of its legislature, rendered the performance of the act described in the condition subsequent unlawful, the condition of the deed was thereby destroyed, and the title vested absolutely in the defendant. . *Mitchell* v. *Reynolds*, 1 P. Wms., 189; *Doe dem. Marquis of Anglesea* v. *Church Wardens of Rugeley*, 6 Q. B., 107; *Brewster* v. *Kitchin*, 1 Ld. Raym., 317; 2 Black. Com., 156; 2 Washb. R. Prop., 8; 4 Kent's Com., 130; 1 Rev. Swift Dig., 98.

In *Doe on demise of Marquis of Anglesea* v. *Church Wardens of Rugeley*, the condition was that the lessees should use and occupy the premises for the sole use, maintenance and support of the poor of Rugeley, and should not convert the building or the land described to any other use or purpose. For a time the building was used for that purpose, but afterwards the paupers were removed by order of the poor law commissioners and the workhouse closed. Lord DENMAN, C. J., in delivering the judgment of the court, said :—" But even if the condition were not performed, it appears to us that the non-performance would in this case be excused, as being by act of law, and involuntary on the part of the lessee."

If it should be said that the plaintiffs' interests in this property had been taken from them by the state or by the city of Waterbury by right of eminent domain, we should reach the same conclusion upon the question of whether the condition of the deed had been broken. If the city of Waterbury, by taking this land for a public park, under the valid act of the legislature, has prevented its use as a burial place, it is clear that the performance of the condition of the deed has been prevented by act of law; and we know of no principle or authority by which the taking of the property under the right of eminent domain would work a forfeiture which would require payment both to the plaintiffs of the value of the land and to the defendant of the value of the estate forfeited.

If it were true that, by the appropriation of this land to a public use by right of eminent domain, the plaintiffs had

Scovill *v.* McMahon.

been deprived of their interest in the property, though such taking would not work a forfeiture, yet there would be strong reasons in support of the plaintiffs' claim that the fund in the defendant's hands should be divided between the plaintiffs and the defendant in proportion to the value of their respective interests in the land. And that brings us to the consideration of the remaining claim of the plaintiffs, that, even if there has been no breach of the condition of the deed which would entitle them to recover the entire $12,500, yet, having, by the act of the legislature and the subsequent proceedings under it, been deprived of their interest in the land, that is, of a possibility of reverter, which, they say, was a valuable estate, they should receive some part of said fund as a compensation for their loss.

Upon the facts disclosed by the record this claim cannot be sustained. Conceding that, by the act of the legislature, the plaintiffs' interest in this property has been destroyed, and that such interest was one which is susceptible of a valuation in money, it does not follow that they are entitled to compensation from the fund for the loss of that right or interest.

Regarding the plaintiffs' right to re-enter upon condition broken as a species of property, that property has neither been taken nor destroyed by the conversion of this land into a public park by right of eminent domain. The purpose of the legislative act was two fold:—first, by prohibiting the use of this land as a cemetery, to remove a public nuisance; and second, to permit the city of Waterbury to take the ground for a public park.

The fact is apparent that this old burying ground, long since filled with graves, and within the limits of the city of Waterbury, had become obnoxious to the public and had come to be regarded as a public nuisance. The preamble of the act of the legislature in effect declares it to be such. The language is—"Said old cemeteries have long been in a neglected condition, and, from the growth of said city around and from other causes, they are no longer proper places for cemeteries." The complaint alleges that these cemeteries

were public nuisances, and we think the facts apparent upon the record fail to show that they had become so by the fault of the defendant or that they would have been any the less a nuisance had they been enclosed by a fence. Evidently, from the growth of the city and from the location of the cemetery in the city, it had become an unsuitable place for a burial ground. Under these circumstances, and with two distinct objects in view, the act in question was passed, providing, first, that it should be unlawful to make further interments in the land, and that, upon the petition of the city and upon hearing all parties interested, the Superior Court might order the removal to other cemeteries of all the remaining bodies and monuments at the expense of the city; and, second, that upon payment to the owners of the value of the land duly assessed as provided by the act, and upon the removal of the bodies and monuments from the cemetery, the land should become a public park, etc.

If, because the use of this land as a place of burial was harmful to the health and welfare of the public, the act had forbidden further interments to be made in these cemeteries, and had provided for the removal of the bodies and monuments, without permitting the land to be taken for a public park, the plaintiffs would have sustained the same injury as that of which they now complain. The defendant would have been deprived of his right to the use of this land as a burial place without receiving compensation therefor. By the destruction of the condition of the deed the plaintiffs would have been deprived of their interest, a possibility of reverter, while the title to the property would have remained absolute in the grantee.

If the property of the plaintiffs has been taken from them by the state, it has been taken by the act prohibiting the further use of this land as a place of burial. The provision permitting the city to take the land for public purposes after it had ceased to be a burial place and could no longer be used for that purpose, did not affect the plaintiffs' rights.

Forbidding the use of this property in a manner hurtful to the health and comfort of the community is not a taking

of the plaintiffs' property for public use within the meaning of the constitution. It was a proper and valid exercise of the police power vested in the state, and if, as a necessary result of the act of the legislature removing a public nuisance, the plaintiffs have been deprived of the right in question, they are not thereby entitled to à portion of the money in the defendant's hands. *Raymond* v. *Fish*, 51 Conn., 80; *Dunham* v. *City of New Britain*, 55 id., 378; *State* v. *Wardin*, 56 id., 216· *Woodruff* v. *N. York & N. England R. R. Co.*, 59 id., 63.

The Superior Court committed no error in sustaining the defendant's demurrer to the complaint.

In this opinion the other judges concurred.