## MEAN v. CALLISON.

### No. 798. Opinion Filed May 9, 1911.

1. **HIGHWAYS—Rights and Liabilities of Abutting Owner—Negligence—Question for Jury.** An owner of land abutting on a public highway intersected by a stream, which was spanned by a bridge, deflected her fence so as to connect with the wings of the bridge on both banks of the stream and, by placing a fence across the stream under the bridge, allowed her cattle to go under the bridge. In a suit in damages for injuries caused by the cattle running from under said bridge and frightening plaintiff's team so that it ran away and threw him out of his buggy as he was attempting to cross said bridge, **held** that defendant was the owner of the land to the middle of the highway, subject to the easement of the public, and that it was a question of fact for the jury to determine whether defendant's use of the highway was an unreasonable interference with the rights of the public therein, and, if so, whether the cattle, under the circumstances, presented an object reasonably calculated to frighten horses of ordinary gentleness.

2. **NEGLIGENCE—Question for Jury.** Where from the facts shown by the evidence, although undisputed, reasonable men might draw different conclusions respecting the question of negligence, such question is properly for the jury.

(Syllabus by the Court.)

*Error from District Court, Kingfisher County; A. H. Huston, Judge.*

Action by B. S. Mean against Nora L. Callison. Demurrer to petition sustained, and plaintiff brings error. Reversed.

*Nagle & Blair,* for plaintiff in error.

*D. K. Cunningham,* for defendant in error.

TURNER, C. J.   On October 2, 1906, B. S. Mean, plaintiff in error, sued Nora L. Callison, defendant in error, in the district court of Kingfisher county in damages for personal injuries alleged to have been caused by defendant's negligence. The proof in support of the allegations of the petition shows that on June 8, 1906, defendant was the owner of a certain tract of land situate in said county; that the south boundary thereof abutted on a public highway; that across this highway ran a creek; that as part of said highway and about in the middle of it, the proper authorities had constructed a bridge at an elevation of some 12 feet above the bed of said stream; that prior to the injury complained of defendant had deflected her south line of fence so as to connect with the approaches of said bridge on both banks of the creek, and by running her wire across the creek under the bridge permitted her cattle, pasturing in the adjoining enclosure, to get under said bridge; and that on said day, while under the bridge and while plaintiff was driving across, they ran out from under it and so frightened his team as to cause it to run away and throw him out and injure him.

At the close of the testimony defendant demurred to the evidence, which was sustained. Plaintiff brings the case here. In sustaining the demurrer the court, in effect, held that under the facts shown defendant was acting within her rights as the owner of the fee of the highway, and hence not negligent. The case turns upon whether defendant's use of that part of the highway was or was not an unreasonable interference with the rights of the public. The rule of the common law is that a person holding lands bounded on a highway is held to own to the center thereof subject to the easement of the right of way. There is nothing in the statute changing this rule in Oklahoma Territory. Snyder's Stats. of Okla., sec. 7757, reads:

"The right of way of any public road shall be paid for by the township in which such right of way lies * * *. The county commissioners shall certify to the township board the price of such right of way * * * "—which shall be paid for.

The Organic Act, sec. 23, provides:

"There shall be reserved public highways four rods wide between each section of land in said territory, the section lines being the center of said highway, but no reduction shall be made, where cash payments are provided for, in the amount to be paid for each quarter section of land by reason of such reservation. But if the said highway shall be vacated by any competent authority, the title to the respective strips shall inure to the then owner of the tract of which it formed a part of the original survey."

"Inure" is defined by Bouvier's Law Dict. to mean: "To take or have effect; to serve to the use, benefit or advantage of a person." That is to say, when the easement is abandoned the title to the strip abandoned becomes *ipso facto* again coupled with the use. Under this condition the rule is well stated in *Pemberton v. Dooley*, 43 Mo. 176, thus:

"It is * * * well settled that the owner of the soil on the two sides of the ordinary country road is the owner likewise of the soil in the road, subject only to the right of the public use as a road. 'The public requires a right of way with the powers and privileges incident to that right, such as digging the soil, using the timber and other materials found within the limits of the road, in a reasonable manner, for the purpose of making the roads and its bridges. The former proprietor of the soil still retains the exclusive right in all the mines, quarries, springs of water, timber and earth, for every purpose incompatible with the public right of way.' Washb. on Ease. & Serv. (3rd Ed.) p. 228; *Williams v. Railroad*, 21 Mo. 580; *Hannibal Bridge Co. v. Schaubacher*, 57 Mo. 582; *Ferrenbach v. Yurner*, 86 Mo. 416-419; 1 Thompson on Neg. 329."

We are therefore of opinion that at the time of the injury complained of the title of the right of way to that part of the highway thus enclosed was in plaintiff, and all that passed to the public was the easement of a right of way for the purpose of a highway. The right to use said land so enclosed was in plaintiff inferior to the right of the public; that is, she had the right to so

use it so long as it did not interfere with the public use. In *Snively v. Washington Twp.*, 218 Pa. 249, plaintiff owned lands on both sides of a public highway intersected by a ravine spanned by a bridge, and used the ravine as a passageway for cattle. Speaking of his right, the court said:

"The landowner had the privilege of using it as a cattle way; but his right was inferior to that of the public, and must give way when the superior right is asserted. The appellant contends that he had a right to maintain the passageway for his cattle, because it did not interfere with the public easement. This contention is based on the principle that one who owns the soil over which a highway passes has a right to enjoy his property in every way that may promote his interests or convenience, so long as he does not interfere with the public use. This is a familiar and settled principle of law."

Whether defendant's action in the premises was an unreasonable interference with the public use of the highway and amounted to negligence, was a question of fact for the jury.

*Tinker v. N. Y., &c., Ry. Co.*, 5 Am. Neg. Rep. 208, was an appeal from a judgment for plaintiff for damages which she sustained by being thrown to the ground from her seat in a wagon, the jury having found that the accident was caused by her team becoming frightened at two heavy timbers which lay in a ditch at a distance of about 10 feet from the traveled part of the highway and about 15 feet from the fence separating the highway from the defendant's land. It was urged, among other things, in defense that the placing of the sticks was an act clearly within the rights of defendant as owner of the fee of the highway, and that under the evidence submitted defendant could not be charged with negligence. The court, after declaring that defendant had the right of the use of the highway subject to the rights of the public in and to it for highway purpose, said that two facts must exist to make the encroachment lawful: First, the obstruction thereon must be reasonably necessary for the transaction of business; second, it must not unreasonably interfere with the rights of the public; and that if an encroachment be not justified by these two

facts it is unlawful and a nuisance. And, after quoting approvingly from Thompson on Neg., vol. 1, page 349:

"There is no judicial distinction between an injury happening through a traveler's horse taking fright at the object and an injury happening through his coming in direct collision with it"
—said:

"Indeed, it has been held many times, in other states besides our own, that objects calculated to frighten horses of ordinary gentleness constitute an encroachment upon the highway which will support a recovery for injuries sustained by the person injured without fault on his part. See cases cited in Thomp. Neg., pp. 995, 1181"
—and held that the question was one of fact for the jury; and further said:

"Whether or not the evidence in this case justified the claim of the defendant that its action in placing the sticks where it did was reasonably necessary in the conduct of its repairs, and not an unreasonable interference with the rights of the public, presented a question of fact. This is obviously so, but in addition it should be said that it has been so decided by this court. *Callahan v. Gilman, supra; Flynn v. Taylor, supra; Hudson v. Varyl,* 44 N. Y. 553. It was the duty of the court, therefore, to submit to the jury, under all the facts of the case, the question whether the use which the defendant made of the highway was necessary and reasonble, within the rule we have referred to. This the court did, in a charge which was fair and free from legal fault."
—and affirmed the judgment of the trial court.

It should also have been left to the jury where, as here, the testimony reasonably tends to prove it, whether the inference, if unreasonable, presented an object reasonably calculated to frighten horses of ordinary gentleness; if so, and said two facts existed and caused the injury, that plaintiff could recover, otherwise not.

In *Poilett v. Simmer,* 106 Pa. St. 95, a land owner, engaged in whitewashing his fence skirting a highway running through his land, used a small barrel mounted on wheels. This with a shovel projecting slightly above the top was left at the side of the highway over Sunday. A horse drawing a carriage along the highway became frightened at said object and upset the carriage

and injured plaintiff. Speaking to this point, the court, after citing abundant authority, said:

"The substance of the doctrine is that the mere exercise of the right of obstruction for a lawful purpose imposed no liability to pay for damages resulting therefrom. It must be an unreasonable or negligent exercise of the right, in order to impose liability. To say that a man may lawfully deposit brick and lumber on the highway, in front of a lot on which he is erecting a building with those materials, and yet if their presence has a tendency to frighten horses, and some over-sensitive horse does take fright at them and run away and cause damage, the person depositing the materials is guilty of negligence, and shall pay the damage, is merely giving a right with one breath and taking it all away with another. In practical effect such a right would be no right at all. Any pile of bricks, stones, sand, lumber, or other building material, in a street, has a tendency to frighten horses, and in almost any community there could always be found some horses that would actually take fright at seeing them. But that circumstance alone will not take away the right to deposit them in such a place. There must be some abuse of the right, some unusual and extraordinary mode of arranging the materials, such as will probably produce fright with ordinarily gentle and well-trained horses, before it can be fairly said liability arises."

For the reason that these were questions upon which reasonable men might differ from the facts shown by the evidence, the court erred in taking them from the jury and sustaining defendant's demurrer to the evidence. The rule is:

"Where from the facts shown by the evidence, although undisputed, reasonable men might draw different conclusions respecting the question of negligence or contributory negligence, such questions are properly for the jury." (*Sans Bois Coal Co. v. Janeway*, 22 Okla. 425.)

It is unnecessary to consider other points raised in the briefs. The cause is, accordingly, reversed and remanded for a new trial.

All the Justices concur.