Action to recover land in the city of Greensboro, and damages. From a judgment as upon nonsuit, plaintiffs appealed. Affirmed.
The following are the material facts:
That Robert Moderwell and Andrew Fountain, the owners in fee and in possession of a tract or parcel of land in Guilford County, North Carolina, described as follows: "Beginning at a corner on Fountain land running north 6.33 rods; thence running north 6.33 rods on Robert Moderwell's land to a corner; thence due east 12.65 rods to a stake; thence south 6.33 rods to a stake; thence 6.33 rods on Fountain land to a corner; thence due west 12.65 poles to the beginning, containing one acre; `This lot or parcel of land is known as the Old Methodist Burying Ground'"; on 14 March, 1836, executed and delivered a deed, conveying said land, to Robert Mitchell and others as trustees of the Methodist Episcopal Church and their successors in office, which deed is in usual form, but containing these terms: "In trust for the uses and purposes hereinafter mentioned and declared," and in the habendum clause this: "In trust that they shall appropriate and set apart said piece or parcel of land as a burying ground for the use of the Methodist Episcopal *Page 522 
Church, and further, that the said Andrew Fountain shall have the full and free privilege of interring in said grave-yard all his relations and such other as he may think proper." With a provision for the appointment of the successors to the named trustees according to the statutes, which deed was registered 26 January, 1839.
That by authority contained in said deed, the grantees in said deed went into possession of the property and held the same under said deed, and that the same was used as a burying ground in accordance with the stipulations contained in said deed, and became known as the "Old Methodist Burying Ground."
That on 12 February, 1907, the General Assembly of North Carolina enacted the following private law, known as chapter 67, Private Laws of 1907:
"CHAPTER 67, PRIVATE LAWS 1907.
"The General Assembly of North Carolina do enact:
"SECTION 1. That S.W. Trogden, J. A. Odell, M. Lamb, W. H. Turner, W. E. Coffin, W. F. Alderman, Jr., J. N. Richardson, G. Will Armfield, and Thomas J. Copeland, Trustees of West Market Street Methodist Episcopal Church, South, Greensboro, Western North Carolina Conference, and their successors in office, are authorized and empowered to remove and reinter in suitable lots in Green Hill Cemetery, Greensboro, North Carolina, and in a decent and suitable manner, the remains of bodies buried in a lot or tract of land known as the Methodist Burying Ground, situate in the southern part of Greensboro, North Carolina, and east of South Ashe Street, in said city, which forms its eastern boundary; together with the stones and slabs marking the graves, such stones and slabs to be replaced at their respective graves in the plots in said Green Hill Cemetery.
"SEC. 2. That the said trustees shall give thirty days notice in a newspaper published in Greensboro, North Carolina, of their purpose to remove and reinter said remains as provided above; and, at the request of the next of kin of any person whose remains are buried at said Methodist Burying Ground, said remains shall be turned over to said next of kin so applying to be interred at any place they desire."
That the parties named in said act are successors in office to the trustees named in the deed hereinbefore referred to.
That pursuant to the provisions of said act the bodies interred in the old Methodist Burying Ground were removed from said burying ground in March, 1917, and reinterred in Green Hill Cemetery, Greensboro, North Carolina, by the parties named in the preceding paragraph.
That on or about 4 October, 1901, the governing body of the city of Greensboro passed an ordinance, to wit: *Page 523 
"That no person shall bury or cause to be buried any dead bodies in any other place within the city limits other than Green Hill or Union Colored Cemetery, and any one so offending, a penalty of $25.00 shall be imposed."
It is admitted that the Trustees of West Market Street Methodist Episcopal Church, South, successors in office to the trustees described in the original deed from Fountain and Moderwell, on 10 January, 1919, sold and conveyed to the defendants, James A. Harris, J. H. Dillard and C. O. Payne, since deceased, the land known as the "Old Methodist Burying Ground," and that said parties entered into possession of said land under said deed, claiming the same as their own private property.
That Robert Moderwell died in the year 1836, leaving a will duly probated in the office of the clerk of the Superior Court of Guilford County, in Book of Wills B, at page 556.
That by the terms of said will, all the rest and residue of his estate, both real and personal, was devised and bequeathed to his wife, Martha Moderwell, except such as was excepted to her and her heirs forever in said will. It is further admitted that there was no exception made of the lands described in the complaint, and that no special reference was made to said lands in said will.
That in 1867, Martha Moderwell died leaving a will which was duly probated in the office of the clerk of the Superior Court of Guilford County, in Book of Wills D, at page 347. That under the terms of the will of the said Martha Moderwell, she gave and bequeathed to her nieces Mary Shields, Martha Shields, Rachel Shields, Julia Shields, Hybernia Shields and Nancy Shields, the rest and residue of her estate, real and personal, to be equally divided between them share and share alike, to them and each of them, their heirs and assigns forever. No special reference was made in said will to the lands in controversy.
That this suit was instituted on 15 January, 1924.
That on 7 January, 1922, the defendants, Payne and Harris, and their wives conveyed to the defendant Dillard, their two-thirds interest in a part of the land conveyed to Payne, Harris and Dillard by the trustees of West Market Street Methodist Episcopal Church; that thereafter the said Dillard and wife conveyed to the defendant, John W. Simpson, trustee, the said portion of said land to secure an indebtedness of $3,000 therein secured, which said deed of trust is recorded in Book 378, at page 100, said deed of trust being dated 7 January, 1922, recorded 12 January, 1922.
That by deed recorded in Book 327, at page 2, in the office of the register of deeds for Guilford County, dated 10 May, 1919, the defendants, Dillard and Payne, and their wives conveyed to the defendant Harris their two-thirds interest in a part or parcel of the land described *Page 524 
in deed to said three defendants from the trustees of the West Market Street Church; that thereafter said Harris and wife conveyed the same to J. F. Stephens, trustee, by deed of trust recorded in the office of the register of deeds of Guilford County, in Book 337, at page 223, on 9 April, 1921, to secure an indebtedness of $2,000.
That since the commencement of this action C. O. Payne died intestate and without issue, and his wife, Bessie Payne, and his brothers, to wit: Rodney Payne and John Payne, and his sisters, to wit: Sylvia Payne, Eliza Payne, being all and his only heirs at law, and Bessie Payne, his duly qualified administratrix, pursuant to order of the court duly issued, were made parties to this action.
That since the commencement of this action James I. Fountain has died testate, and his will was duly probated in Book of Wills J, at page 246, in the office of the clerk of the Superior Court of Guilford County, North Carolina, 26 March, 1924, which said will contained the provision that said James I. Fountain devised all his right, title and interest to the land in controversy to his wife, Jennie L. Fountain.
It is admitted that the annual rental value of said tract of land is $25.00 per year; that at the time of the beginning of this action and since, James A. Harris, J. H. Dillard and the heirs of C. O. Payne, and Jessie Davis, were in possession of this land and are still in possession thereof; that James I. Fountain is the heir at law of Andrew Fountain; that the plaintiffs other than Jennie L. Fountain, are related to Robert Moderwell, the other grantor in the original deed; that if the plaintiffs, other than Jennie L. Fountain, have any interest in the land described in the complaint, which the defendants deny, that such interests are the interests alleged in the complaint; that if Jennie L. Fountain has any interest in said land, which the defendants deny, the same is an undivided one-half interest therein.
A condition subsequent with a clause of reverter does not appear in the deed recited nor does it arise by clear implication. Braddy v. Elliott,146 N.C. 578. No apt words are used to indicate an intention to create a condition subsequent which will work with a forfeiture. To every good expressed condition is required an external form, that is, sufficient words to declare an intent in the party to have the estate conditional, and an internal form, that is, such matter as whereof a condition may be made. Shep. Touchstone, vol. 1, *126 (241); Scantlin v. Garvin, 46 Ind. 262. The proper subject-matter exists, but the instant deed does not contain the "sufficient words." *Page 525 
The usual and proper technical words, such as "provided," "so as," "on condition," or those mentioned by Lord Coke when he says: "Words of condition are sub conditione, ita quod, proviso," or the words "si" or"quod contingat" and similar terms with the clause of forfeiture or reentry. Coke on Littleton, 203 a, 203 b, 204 a; Stanley v. Colt,72 U.S. 119; Hall v. Quinn, ante, 326. Conditions subsequent which work a forfeiture divesting estates are not to be raised readily by inference or argument, for they are not favored by the law. Hall v.Quinn, supra; Church v. Bragaw, 144 N.C. 126; Rawson v. SchoolDistrict, 89 Mass. 125 (7 Allen's Rep., 125); Scovill v. McMahon,62 Conn. 378, 21 L.R.A., 58; Thompson v. hart,66 S.E. 270 (Ga.); 2 Devlin on Deeds, paragraph 970;Kilpatrick v. Mayor of Baltimore, 81 Md. 179; Griffitts v. Cope, 17 Pa. St., 96; Mahon v. Gormley, 24 Pa. St., 81; MethodistEpiscopal Church of Columbia v. Old Columbia Public Ground Co., 103 Pa. St., 608; Jones v. Renshaw, 130 Pa. St., 327; Estate ofRichard Smith, 181 Pa. St., 109; Baldwin v. Atwood,23 Conn. 367; Mordecai's Law Lectures, 550; Tiffany on Real Property, vol. 1, 270, paragraph 79; Weller v. Brown, 160 Cal. 515;Williams v. Vanderbilt, 145 Ill. 238; Peden v. Chicago, Rock Island Pacific Ry. Co., 73 Iowa 328; Cunningham v. Parker, 146 N.Y. 29, 11 L.R.A. (N.S.), 513; R. R. v. Carpenter, 165 N.C. 465; Emerson v. Emerson,43 N. H., 476, 80 Am. Dec., 184; Whitton v. Whitton, 32 N. H., 163, 75 Am. Dec., 163; Ry. v. Honaker, 66 West Va., 136; Henry Rahr's Sons Co. v.Buckley, 159 Wis. 589; Sohier v. Trinity Church, 109 Mass. 1. This rule does not necessarily apply to conditions implied by law, or where, from the nature of the subject-matter, or the contemplation of the parties, the condition with forfeiture is implied, as in timber deeds (Williams v.Parsons, 167 N.C. 529, 531; Gilbert v. Shingle Co., 167 N.C. 286;Hornthal v. Howcott, 154 N.C. 228; Bateman v. Lumber Co., 154 N.C. 248;Bunch v. Lumber Co., 134 N.C. 116; Lumber Co. v. Corey, 140 N.C. 462;Hawkins v. Lumber Co., 139 N.C. 160; Strasson v. Montgomery, 32 Wis. 52; Mordecai's Law Lectures, 548, 549; Woody v. Timber Co., 141 N.C. 471), or in mining leases. (Conrad v. Morehead, 89 N.C. 31; Maxwell v.Todd, 112 N.C. 677; Hawkins v. Pepper, 117 N.C. 407).
Although certain words are appropriate for the creation of a condition, no particular words are necessarily required, for rules of construction are guides to find the intention of the parties expressed by the whole instrument. Tiffany on Real Property, 268; 4 Kent Com., *132 (142) Churchv. Bragaw, supra; Stanley v. Colt, 5 Wallace (U.S.) 119; Perkins v. Kirby,35 R. I., 84; McCain v. Ins. Co., post, 549. When ascertained, the intention of the parties, as expressed in the instrument, will prevail, although it may divest the estate. *Page 526 
Applying the foregoing principles, we are of opinion that the deed does not create a condition subsequent; therefore, it does not authorize a reentry as upon condition broken.
Plaintiffs, however, do not rest their case solely upon the claim of condition broken, but assert that the words employed are apt to create a trust. Hall v. Quinn, supra. They contend that the trust has failed and a resulting trust has arisen in favor of them as representing the grantors.
Assuming, but not deciding, that the words employed do create a trust, we are of the opinion that the plaintiffs are not entitled to prevail as upon a failure of the trust. Resulting trusts arise in several ways, but the following classification is convenient: "(1) Where a purchaser pays the purchase money, but takes the title in the name of another; (2) where a trustee or other fiduciary buys the property in his own name, but with trust funds; (3) where the trusts of a conveyance are not declared, or are only partially declared, or fail; and (4) where a conveyance is made without any consideration, and it appears from circumstances that the grantee was not intended to take beneficially." Bispham's Equity, 9 ed., 146; Avery v. Stewart, 136 N.C. 426; Williams v. Williams, 108 Iowa 91. Plaintiffs claim to come within the third division, where there is a total failure of the trust.
The entire estate was granted in this deed, nothing was reserved. There is no provision that, if the trust is not performed or fails, the title would revert to the grantors or their heirs or assigns. It is not contended that the plaintiffs are members of the church for which the trust was created. The trust, when created, concerns, in a legal sense, only the trustees and the cestuis que trustent. The right on the part of Andrew Fountain to exercise certain burial rights in the locus in quo is plainly personal to him, and ceased upon his death. The plaintiffs cannot maintain this action on account of a lack of legal interest in the trust to support a prayer for equitable relief to the end that the trust may be performed.Kilpatrick v. Graves, 51 Miss. 432; Strong v. Doty, 32 Wis. 381; Baldwinv. Atwood, supra; Rawson v. Uxbridge, supra, 26 R. C. L., 1361; Faulkner v.Davis, 18 Grattan (Va.), 651, 98 Am. Dec., 698; Thompson v. Childress, 4 Baxt. (Tenn.).
The parties who can maintain a suit to enforce a trust must be either acestui que trust or a trustee, or must sue in right of one of these or must have some legal interest in the subject matter of the trust either granted, or reserved, or by reverter. Female Association v. Beekman, 21 Barb. (N. Y.), 565; Warren v. Warren, 75 N.J. Eq., 415; Perry on Trusts, 2 vol., 1430, paragraphs 873-890.
In this State analogous rulings indicate the rule announced herein.Cooper v. Landis, 75 N.C. 526; Cheshire v. Cheshire, 37 N.C. 569;Younce v. McBride, 68 N.C. 532. *Page 527 
The doctrine of following trust funds only permits one who has an interest therein to maintain an action to recover the funds or the property purchased with the trust funds. Monroe v. Trenholm, 112 N.C. 634.
The husband and father was not allowed to sue to establish a trust for his wife and children even when he alleged that he was a beneficiary in the same trust in Cavenaugh v. Jarman, 164 N.C. 372.
The Legislature gave the full power and authority to remove the bodies from this "burying ground," and the city of Greensboro, by legislative action prohibited the burying of dead bodies there, and the change of conditions around this land in the growth of the city, made this land wholly out of keeping with the benevolent wishes that prompted the conveyance in 1836. The then dreams of its most enthusiastic citizens could not contemplate the present growth of Greensboro, and all the changes that are incidental to its expansion. Parallel facts appear in Sohier v. TrinityChurch, supra.
Rights of burial are peculiar and are somewhat of a public nature and are subject to the police power. It often becomes necessary to remove tombs and burial grounds. Sohier v. Trinity Church, supra; Brick PresbyterianChurch v. New York City, 5 Cowen, 538. This latter case holds constitutional an act of 1823, prohibiting the use of a cemetery on lands conveyed for that purpose in 1766. Coats v. New York City, 7 Cowen, 585. All individual rights of property are subject to legislation belonging to the class of police regulations. Com. v. Alger, 7 Cush. (Mass.), 53;Dingley v. Boston, 100 Mass. 544.
The Legislature, or a court of equity, may authorize a sale of charitable trust property under the needs arising from the exercise of police power by that division of government having jurisdiction of thelocus in quo. Stanley v. Colt, supra; Old South Society v. Crocker,119 Mass. 1. Certainly a court of equity would not now disapprove what it would have authorized in the first instance.
When, in the trend of growth and development, the law made the further use of this burying ground illegal, and the conditions in that vicinity made its continuance as a place for the repose of bodies buried there, in accord with feeling of respect and veneration, which happily prevail among English speaking peoples, undesirable, it was not a violation of the trust, when concurred in by all the cestuis que trustent to make a sale of the grounds after a removal of the bodies. The law had in effect repealed the requirement to use it as a cemetery. 4 Kent Com., 130; BrickPresbyterian Church v. New York, supra; Scovill v. McMahon, supra. This is true whether the deed be construed as containing a condition subsequent or creating a trust. Doe v. Church Wardens of Rugeley, 6 Q. B., 114; Brewsterv. Kitchell, 1 Salk., 198; *Page 528 Peart v. Taylor, 2 Bibb., 556; Martin v. Ballou, 13 Barb., 132; Finlay v.King, 28 U.S. 346; Taylor v. Sutton, 15 Ga. 103, 60 Am. Dec., 682; U.S.v. Arrendondo, 31 U.S. 745.
Equity will not enforce a trust so as to require the violation of law. "Equity follows the law" and does not violate it.
We have considered this in the light of the contention that the plaintiffs are the proper parties to assert their claims in right of the grantors. However, we call the attention of the profession to the inability of devisees, assignees, or other than heirs, to assert title under a reverter upon breach of condition subsequent after the death of the grantor. Sharpe v. R. R., ante, 352; Cross v. Carson, 44 Am. Dec., 742, 759; Thompson v. Thompson, 68 Am. Dec., 649.
The following cases have sanctioned sales of property, under variant, but somewhat similar, deeds: St. James v. Bagley, 138 N.C. 394; Hayes v.Franklin, 141 N.C. 599; Church v. Bragaw, supra; Church v. Ange,161 N.C. 314; Fisher v. Fisher, 170 N.C. 381; Middleton v. Rigsbee,179 N.C. 440; Snyder v. Asheboro, 182 N.C. 708.
In Page v. Covington, 187 N.C. 621, the decision was based on the peculiar language of the deed, and the use of the funds to be derived from the sale was admitted and not debated.
We are of the opinion that, under the facts on this record, an absolute title vested in the grantees, Harris, Dillard, and Payne, under the deed of 10 January, 1919, and that the judgment appealed from must be
Affirmed.