**WOODVILLE, OKL., et al. v. UNITED STATES.**

**UNITED STATES v. NEW WOODVILLE, OKL.**

**Nos. 3177, 3184.**

Circuit Court of Appeals, Tenth Circuit.

Jan. 3, 1946.

Reuel W. Little, of Madill, Okl. (Jack H. Smith and Little & Smith, all of Madill, Okl., on the brief), for appellants and cross-appellee.

George S. Swarth, of Washington, D. C. (J. Edward Williams, Curtis P. Harris, and Roger P. Marquis, all of Washington, D. C., on the brief), for appellee and cross-appellant.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This appeal and cross-appeal arise out of condemnation proceedings had in the United States District Court for the Eastern District of Oklahoma. By appropriate legislation, Congress authorized the construction of the Denison Dam and Reservoir Project for flood control and other purposes. The impounded waters thereof would completely flood the town of Woodville, an incorporated town covering approximately 160 acres. The St. Louis-San Francisco Railway Company's railroad right of way through the town was also in the flooded area.

Between June, 1941 and March, 1943, the United States government acquired all the lots and tracts of land within the town, and by agreement with the railroad company, provided a relocated right of way for its tracks outside the reservoir area. In consideration thereof, the railway company conveyed all its interest in the old right of way to the United States. The City of Woodville was dissolved under the law of Oklahoma, and the Town of New Woodville was incorporated. It was not a relocation of the old Town of Woodville. Only about fifty of the three hundred residents of Woodville moved to the new town. Only three of these were land owners in the old town.

On January 29, 1945, the government instituted this action against both municipalities [1] to condemn the easements in the lands constituting the streets, sidewalks and alleys, as well as the fee title to the railroad company's right of way. In their answers the two cities sought substantial compensation for the value of the streets, sidewalks, alleys, and for a water well, and compensation for the full value of the strip of right of way. It was stipulated that the full value of this strip of land was $300.

The cause was tried to the court. Appropriate findings of fact and conclusions of law were made by the trial court. Judgment was entered for Woodville for $1 for the streets, sidewalks and alleys, and for $300 for the railroad right of way. In Number 3177 Woodville has appealed from that portion of the judgment awarding it One Dollar, and in Number 3184 the government has appealed from that part of the judgment awarding Woodville the full value of the strip of right of way land.

—Number 3177—

Under the Fifth Amendment to the Constitution private property may not be taken for public use without payment of just compensation. It is well settled that under this constitutional guaranty the government must pay a city just compensation for streets, sidewalks or alleys when taken under the power of eminent domain. It is obvious that just compensation to a city for its streets taken by condemnation cannot be measured by the ordinary standards of value. It does not own the streets. Under Oklahoma law the fee title thereto is in the owners of the abutting property.[2] All it has is an easement in the streets,

---

[1] For the purpose of this opinion it is not necessary to differentiate between the two municipalities, and they will be referred to as Woodville.

[2] Mean v. Callison, 28 Okl. 737, 116 P. 195; In re Vance, 115 Okl. 8, 241 P. 164; Joy v. Kizziar, 169 Okl. 642, 38 P.2d 493.

sidewalks and alleys, impressed with the obligation on its part to maintain them for public use. Its interest in such easements is totally unlike property of a private corporation.[3] Just compensation in a condemnation proceeding for the taking of streets and alleys cannot be measured by the same standards as compensation for the taking of private property.

 It is well settled that the compensation to which a city is entitled when its streets are condemned is the cost of providing necessary substitutes therefor.[4] But where a city is not required to provide substitutes and it is not necessary to do so, it has suffered no financial loss and is therefore not entitled to substantial damages for the taking of such public ways.[5] Here the government took all the private property in the whole town. All the residents of Woodville moved away. There were none left. The very nature of the project was such that no new residents would or could come into town. There was therefore no need for new streets, sidewalks, or alleys. Woodville was completely relieved from the obligation to provide substitute public ways. It therefore suffered no monetary loss for which it was entitled to substantial compensation. As a matter of fact, it surrendered its charter and ceased to exist.

 Before Woodville surrendered its charter, it assigned all its claims of any kind or nature that it had, to the Town of New Woodville. But New Woodville, as assignee of the old city, could gain no greater rights against the government than Woodville, the assignor, had. Had New Woodville been a relocation of Woodville, we would have an entirely different problem. But the court specifically found that it was not a relocation of the old town. This finding is amply sustained by the record.

—Number 3184—

In its cross-appeal in this case, the government contends that the court below erred in allowing Woodville judgment for $300, the full value of the land embraced in the railroad company's right of way. The land included in the right of way originally belonged to the Choctaw and Chickasaw Indian Tribes. It was granted to the predecessor of the St. Louis-San Francisco Railroad for right of way purposes under Sections 13 et seq. of the Act of February 28, 1902, 32 Stat. 43. The Act of April 26, 1906, 34 Stat. 137, sought to make final disposition of all tribal lands. Section 14 provided that the title to tracts of land reserved from allotment because of the right of any railroad company therein in the nature of an easement for right of way purposes should vest in the owner of the legal subdivision of which such land was a part if it was abandoned by the railroad as a right of way, except lands within a municipality, the title to which, upon abandonment, should vest in the municipality. Woodville claims the right to receive the full value of the tract in question under this provision of the statute.

We know of no case that has held that the ejectment, so to speak, of a railroad from its right of way by the sovereign under the superior power of eminent domain constitutes an abandonment so as to work a forfeiture of the estate. The authorities contain a great deal of discussion as to the nature of the estate of an easement for railroad right of way purposes. They variously designate such an estate as a qualified, base, or determinable fee. The authorities are not in agreement whether such an estate is determinable upon condition subsequent or whether it is a fee upon conditional limitation. We think that such an estate constitutes a base fee.[6] Oklahoma has held that such an estate is a fee determinable upon condition subsequent.[7] In our opinion it is not necessary to determine whether the estate in question is a fee determinable upon condition subsequent or a fee upon conditional limitation.

 Where the performance of a condition in a deed is made impossible by operation of law, compliance therewith is ex-

---

[3] Jefferson County, Tenn., v. T. V. A., 6 Cir., 146 F.2d 564.

[4] Jefferson County, Tenn., v. T. V. A., 6 Cir., 146 F.2d 564; United States v. Des Moines County, Iowa, 8 Cir., 148 F.2d 448.

[5] United States v. Des Moines County, Iowa, 8 Cir., 148 F.2d 448; Mayor and Council of City of Baltimore v. United States, 4 Cir., 147 F.2d 786.

[6] In Chandler v. Jamaica Pond Aqueduct 

Corp., 125 Mass. 544, a base or qualified fee is defined as: "An estate which may continue in one and his heirs forever, but which has a qualification annexed to it, by virtue of which it may be determined when that qualification is at an end."

[7] Oklahoma City v. Local Federal Savings & Loan Ass'n, 192 Okl. 188, 134 P.2d 565.

cused, and no forfeiture results. In Doe ex dem Marquis of Anglesea v. Church Wardens of Rugeley, 6 Q.B. 107, the condition of the deed was that the lessee should use and occupy the premises for the sole use, maintenance and support of the poor of Rugeley, and should not convert 'the building or land to any other use or purpose. After some time, the poor were removed by order of the Poor Law Commissioner, and the workhouse was closed. With respect to whether this worked a forfeiture, Lord Denman, C. J., said: "But even if the condition were not performed, it appears to us that the nonperformance would in this case be excused, as being by act of law, and involuntary on the part of the lessee." In Scovill v. McMahon, 62 Conn. 378, 26 A. 479, 481, 21 L.R.A. 58, 36 Am.St.Rep. 350, the deed granted the land for a cemetery and provided that it be used for a burying ground and for no other purpose. By act of the Legislature the use of the land for that purpose was prohibited, and the act required that the bodies buried therein be removed and that the city might acquire the tract for a public park. Upon the question whether this resulted in a forfeiture of the estate, the Connecticut Supreme Court quoted with approval from the above English case, and continued by saying: "We think the law is not as contended for by the plaintiffs; and that, the grantee having used the land for a place of burial, and for no other purpose, when the state, in the proper and reasonable exercise of its police power, by a valid act of its legislature, rendered the performance of the act described in the condition subsequent unlawful, the condition of the deed was thereby destroyed, and the title vested absolutely in the defendant." The court further held that its conclusion would be the same if the property had been taken under the power of eminent domain rather than under the terms of a specific statutory provision. We accordingly conclude that the condemnation of the railroad company's right of way by the government made impossible the continued fulfillment of the condition of the railroad right of way grant. Performance of the condition was therefore excused as being involuntary on the part of the grantee and no forfeiture of the estate resulted.

▌▌▌ All the steps necessary to effectuate the purposes of the act authoriz-

ing the construction of this project must be viewed as one proceeding.[8] While the government acquired the various pieces of property, including the tract in question, by contract with the respective owners, and at different times, the respective rights and interests of all the parties must be considered as though the government had proceeded against all of them in a single condemnation proceeding. It follows, then, that at the time of the condemnation of this tract the city had only the right which was reserved to the Indian Tribes at the time the right of way was granted and which passed to the city by the Act of 1906. Was that such a right as was compensable in a condemnation proceeding? We think this question must be answered in the negative. American Jurisprudence, Vol. 18, Sec. 231, Eminent Domain, Vendor and Purchaser, states the rule as follows:

"When land which had been conveyed in fee to its present holder upon condition that it be devoted to a certain use is taken by eminent domain for a different use, whether the original conveyance is regarded as in trust for the grantor, as a determinable fee, or as a grant upon condition subsequent, the grantor is not entitled to compensation. As the interest of the grantee is a fee simple, the entire estate is in him, and the rights of the grantor, whatever they may be called, and however they might be enforced in equity in case of an unlawful use of the property, are not an estate or interest in the land, and so are not property in the constitutional sense."

A good statement of the principle of law is also found in Lyford v. City of Laconia, 75 N.H. 220, 72 A. 1085, 1089, 22 L.R.A., N.S., 1062, 139 Am.St.Rep. 680. There the court said:

"Whether the plaintiff's right is a possibility of reverter upon a determinable fee, or a right of entry for breach of a condition subsequent, he had when the land was taken no right to the land and no possession of it. 'Wherever the gift is of a fee, there cannot be a remainder, although the fee may be a qualified or determinable one. * * * When once granted, there is nothing left in the donor but a possibility or right of reverter which does not constitute an actual estate. * * * All the estate rests in the first grantee, notwithstanding the qualification annexed to it.'

[8] United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55.

\* \* \* Another reason given is that such an interest is too uncertain to admit of compensation." [9]

Woodville was entitled to only nominal damages. The judgment in Number 3177, Woodville et al. v. United States, is affirmed; and the judgment in Number 3184, United States v. New Woodville, is reversed and the case is remanded, with instructions to proceed in accordance with the views expressed herein.

[9] To the same effect, see: Chandler v. Jamaica Pond Aqueduct Corp., 125 Mass. 544; People of Puerto Rico v. United States, 1 Cir., 132 F.2d 220; Oklahoma City v. Local Fed. Savings & Loan Ass'n, 192 Okl. 188, 134 P.2d 565.