### WILLIAM S. SNYDER v. TOWN OF ASHEBORO.

(Filed 21 December, 1921.)

**1. Appeal and Error—Unanswered Questions—Record.**

The record on appeal must show what the answer to a question, ruled out at the trial, would have been in order for appellant to rely thereon as error on appeal.

**2. Appeal and Error—Instructions—Contentions—Objections and Exceptions.**

An exception to the statement of the contentions of a party must be made at the time they were given in the charge to be available to appellant.

**3. Negligence—Contributory Negligence—Due Care—Evidence.**

Where there is evidence that the plaintiff, the head miller in a grist mill, observing that the mill did not grind properly, and in order to remedy it, had his hand injured by putting it in the first brake while in operation; that the trouble with the mill was caused by the defendant's employees while repairing it, without the knowledge of the plaintiff, it is competent and material for the defendant making the repairs to show plaintiff's want of due care in so doing.

**4. Same—Custom—Opinion—Experts—Questions for Jury.**

Where it is competent for the defendant to show the plaintiff's want of due care in placing his hands upon a roller in the grist mill he was employed by another to operate, to ascertain why it did not properly operate, experienced witnesses may testify as to the custom in this respect in other like mills; but the question of its necessity or danger under the evidence of the case at bar is one for the jury, upon which the witness may not express his opinion.

APPEAL by defendant from *Bryson, J.,* at March Term, 1921, of RANDOLPH.

Civil action for personal injury alleged to have been caused by the negligence of the defendant. This action was instituted by the plaintiff Snyder to recover damages on account of injuries he sustained while working as head miller of the Southern Crown Milling Company in the town of Asheboro, N. C. The mill was operated by electric current furnished by the defendant from a municipally owned and operated plant. On the day of the injury, the town had notified the Southern Crown Milling Company and the plaintiff that it was necessary to suspend operations pending work on the transmission line necessitating the removal of some of the poles and the severance of the power transmission line. The transmission line, which was composed of three separate wires, connected with a three-phase electric motor at the plant of the Southern Crown Milling Company, by which the machinery of the mill was operated. This transmission line, composed of the three wires, carried an alternating three-phase current of 2,300 voltage. There was testimony indicating that in the course of the work that was done by the employees of the defendant upon the occasion in question, the relative positions of two of the three wires constituting the transmission line became transposed and resulted in the motor at the mill running backward instead of forward as it had been accustomed to do, when the current was turned on. After the lapse of sufficient time, as he thought, for the work to be completed, but before receiving actual notice that the power lines were ready for use, the plaintiff caused an employee of the mill to switch on the current of electricity; and the plaintiff himself threw in gear the brakes or rolls in the usual way, starting the operation of the plant. The machinery thereby put in operation all operated backward and opposite to the normal or proper way. The plaintiff, who insists he did not at the time notice that the machinery was operating backward, went to the first brake or set of rolls, the place where the grinding of the grain was commenced. The brake contained two horizontal corrugated or grooved iron rolls, side by side, revolving together at the top and away from each other at the bottom when in use in the proper way, taking in the grain from above and crushing it as it passed between the corrugated rolls. These rolls were operated by belts and pulleys running at high speed in plain view of the operator. The plaintiff immediately after putting this machinery in operation went to the first brake, inserted his hand and arm in an opening in the stand underneath the rolls, and observing that the rolls were not crushing the wheat as they should, put his hand up against the revolving rolls and his fingers were drawn inward, up and between the rolls, resulting in the injury to his hand and arm complained of. The plaintiff contends that it was necessary that he place his hands upon the revolving rolls of the brake as he did at the time of the injury, for the purpose of determining

whether or not they were properly adjusted; whether they were heating; and whether they were gummed up with wild onions or the crushed grain; and that it was customary for millers to put their hands upon the rolls while in operation as he did for that purpose. The defendant contends that this was neither necessary nor customary, and was dangerous and liable to cause injury, even when the rolls were operating in the proper direction. The case was submitted to the jury upon the three issues of negligence, contributory negligence, and damages.

*Brittain & Brittain and J. R. McCrary for plaintiff.*
*H. M. Robins for defendant.*

ADAMS, J. A change in the relative position of certain wires which were connected with the electric motor caused the iron rolls to revolve upward instead of downward; and the plaintiff, upon observing that the rolls were not adequately crushing the grain, placed his hand underneath and upon the rolls in search of the cause, when by reason of the reverse revolution his hand and arm were caught in the machinery and injured. The defendant contended that the proximate cause of the injury was the negligent act of the plaintiff in thrusting his hand into the machinery without apparent necessity. Evidence tending to show the plaintiff's want of due care was, therefore, both pertinent and material. But the defendant's exceptions to his Honor's statement of the plaintiff's contention concerning the established custom of examining the rolls cannot be sustained because no objection was made by the defendant at the time. *Phifer v. Comrs.,* 157 N. C., 150. We presume the exceptions were intended to show the importance as well as the competency of evidence which the defendant sought to elicit from R. D. Bost. This witness was asked whether it was customary for the miller to put his hand upon the rolls of the first brake in order to determine its condition. The witness was not permitted to answer. It is not necessary to determine whether the witness had shown that he was qualified to answer, or to decide whether the evidence proposed was competent on the question of due care. Since the record fails to disclose what the witness would have said, we cannot assume that his answer would have been favorable to the defendant. It would be vain to grant a new trial upon the hazard of an uncertain answer by the witness. *In re Smith's Will,* 163 N. C., 466; *Dickerson v. Dail,* 159 N. C., 541; *Boney v. R. R.,* 155 N. C., 95; *Fulwood v. Fulwood,* 161 N. C., 601; *Schas v. Assur. Society,* 170 N. C., 421. Exceptions 6, 12, and 13 cannot be sustained.

We are unable to see wherein the admission of the evidence to which the seventh and eighth exceptions relate constitutes reversible error.

Rufus Brady, a witness for the defendant, was not permitted to say whether it was necessary for a miller in the performance of his duties in a mill like that in which the plaintiff was injured to put his hand on the first brake while it was in operation, in order to determine its condition. The objection to the question was properly sustained. It is true that in certain circumstances a person of adequate knowledge and experience may testify whether a particular act is necessary to the accomplishment of a particular result; but in this case whether there was such necessity was a matter for consideration by the jury in their ultimate determination of the question of due care on the part of the plaintiff. Besides, the record does not suggest what the answer of the witness would have been had the evidence been admitted.

Whether there was danger in putting the hand underneath the roll was likewise a question for the determination of the jury upon all the evidence indicating the character, motion, and general operation of the machinery by which the plaintiff was injured. Exceptions 7, 8, 9, 10, and 11 must be overruled. The others are merely formal.

The case seems to have been carefully tried, and the record is free from error.

No error.