Belknap,
April 6, 1909.

## LYFORD, *Ap't*, *v.* LACONIA.

Where land is taken by a municipality for a public use, under section 6, chapter 40, Public Statutes, it is incumbent upon a claimant of damages to establish that at the time of the taking he was an owner of the fee, remainder, or reversion, or a tenant for life or years.

The only practical distinction between a right of entry for breach of a condition subsequent and a possibility of reverter upon a determinable fee is that in the former the estate in fee does not terminate until entry by the party having the right, while in the latter the estate reverts at once upon the occurrence of the event by which it is limited.

Where real estate is taken by a municipality for a public use, one whose interest in the land is a mere possibility of reverter upon a determinable fee, or a right of entry for breach of condition subsequent, has no ownership therein which entitles him to damages for the taking.

APPEAL, from the assessment of damages by the city council of Laconia for land taken under the power of eminent domain for the enlargement of the public library park and lot. The land in question is located at the corner of Main and Church streets, and at the time of the taking was occupied by the Congregational Church Society with a house of public worship. The appellant was awarded one dollar damages. His appeal was heard by the county commissioners, who awarded him the same sum. He thereupon claimed a trial by jury. At the close of his evidence, the court (*Wallace*, C. J.) ruled, subject to exception, that he could recover no more than nominal damages and ordered judgment for him for one dollar.

The appellant claimed title to the premises as the grandson and only heir of Stephen C. Lyford, who in 1837 gave the Congregational Society a deed of the land in question. In consideration of $100, the deed purports to convey to the society, their successors and assigns forever, a certain parcel of land, giving the boundaries. Immediately after the description of the land are the following clauses: "Said society to hold said premises as long as they occupy the same with a house of public worship and no longer, and when they cease to so occupy said premises then the same shall revert to me and my heirs. To have and to hold the said granted premises, with all the privileges and appurtenances to the same belonging, to said society and their assigns, to them and their only proper use and benefit forever." The deed concludes with the ordinary covenants of the warranty form. The society at once took possession under their deed and occupied with a

house of public worship until after the land was taken by the city. Damages were awarded by the city council to the society, and no appeal was taken.

The appellant offered to prove (1) that the society could have obtained a lot equally as suitable and desirable as the Lyford lot, removed the church thereto, and fitted it for occupancy, for less than the sum awarded them as damages and for less than the full value of the Lyford lot; (2) that there had been much discussion about widening Church street opposite the church, that such widening was necessary, and would require cutting off a considerable portion of one side of the building and its probable removal from the lot. The evidence was excluded, and the appellant excepted.

*Jewell, Owen & Veazey* and *Walter S. Peaslee*, for the plaintiff.

*Stephen S. Jewett*, for the defendant.

PARSONS, C. J.  "Whenever any town cannot obtain by contract, for a reasonable price, any land required for public use, such land may be taken, the damages assessed, and the same remedies and proceedings had as in case of laying out highways." P. S., c. 40, s. 6.  Under this section a town may acquire land for a library lot. *Attorney-General* v. *Nashua*, 67 N. H. 478, 480, 482. Following the procedure for the laying out of highways, the selectmen of towns, or the body in cities having their authority in the matter, are required to notify "the owners of the land" proposed to be taken and all persons whose interests are directly affected, separately notifying "tenants for life or years, and the owners of the remainder or reversion." P. S., c. 45, s. 2; *Ib.*, c. 67, ss. 3, 6.  If the land is taken the damages sustained by each owner of the land must be assessed, those of the tenant and remainderman being assessed separately. P. S., c. 67, s. 18.  There is no provision for the allowance of damages except to owners of the land taken. *Eaton* v. *Railroad*, 51 N. H. 504, 508; *Kennett's Petition*, 24 N. H. 139, 143.

Acting under the above cited statutory provisions, the city council of Laconia have taken a tract of land in the city for a park and library lot.  The plaintiff, relying upon the statute, has taken an appeal.  To sustain his appeal he must bring himself within the provisions of the statute and establish that he was at the time of the taking, within the meaning of the statute, an owner of the land taken, *i. e.*, an owner of the fee, remainder, or reversion, or tenant for life or years.  The plaintiff claims as sole heir of Stephen Lyford, under the deed of Stephen to the Mere-

dith Bridge Congregational Society in 1837. That deed purported to convey the land taken in consideration of $100, and is in the ordinary form of a deed of warranty except that it contains, immediately preceding the *habendum* in the usual form, the following: "Said society to hold said premises as long as they occupy the same with a house of public worship and no longer, and when they cease to so occupy said premises then the same shall revert to me and my heirs." The society took possession at the date of the deed and continued to occupy the land with their house of public worship until after the land was taken by the city.

Discussion has been had as to the value and character of the title of the society under this deed. The value of the interest of the society is entirely immaterial. They are not parties to this appeal. Whether they have been paid more or less than the amount to which they are legally entitled is not in issue in this proceeding, in which the plaintiff must prevail, if at all, in his own right and not in the right of the society. The title conveyed to the society under Stephen's deed is material only as illustrating or defining the title or right, if any, remaining in Stephen. The grant is to the "society, their successors and assigns forever, . . . to have and to hold . . . to the said society and their assigns, to them and their only proper use and benefit forever." The clause above quoted, upon which the plaintiff relies, in its full and literal meaning is in direct conflict with the grant to the society, their successors and assigns, and the similar terms of the *habendum*. It might perhaps be argued that the clause conflicting with the grant and the *habendum* should be rejected, and the deed construed as conveying a fee simple absolute, in which case no right of any description remained in the grantor. However this may be, the deed cannot be construed as conveying a mere right of occupation for church purposes, without rejecting more of the language of the deed. The land, not an easement in it, is conveyed. The society are not restricted in their use of the land. Upon any construction that can be given, the society, so long as they occupied with a house of public worship, might also use the land for any other purpose. They could have devoted it to business or commercial uses in conjunction with their occupation with a house of public worship. But such a construction must be given the instrument as will, if possible, give effect to all its provisions. The clause in question discloses a purpose that the property conveyed should be held for a religious or pious use —the maintenance of a house of public worship.

The plaintiff offered evidence and contends that the transaction was a gift and not a sale of the land, from which it would appear that the act of Stephen was a donation of the property for a pious

use.  Such a gift creates a trust in the donees; and the conditions and limitations upon which the trust is created are to be regarded as regulations to guide the trustees, enforceable in a court of equity.  *Rolfe and Rumford Asylum* v. *Lefebre*, 69 N. H. 238.  In *Methodist Society* v. *Harriman*, 54 N. H. 444, there was a bequest to the society of real estate " to have and to hold the same forever for a minister's home."  The court finding that under the circumstances the land could not be used for the purpose, authorized a sale and the investment of the proceeds in a home for a minister.  In *Rolfe and Rumford Asylum* v. *Lefebre*, land was given to trustees on the express condition that they should hold and apply the said property to a charitable purpose, with no power of sale by them during the term of ninety-nine years. There was also a provision for forfeiture in case of the trustees' failure to faithfully comply with the terms and conditions of the trust, and a gift over to an individual.  It was held that a sale of a portion of the land being for the advantage of the trust, a court of equity had power to authorize it, and that the gift over was void.  In a recent case, *Ashuelot National Bank* v. *Keene*, 74 N. H. 148, the words immediately preceding the *habendum* of the deed, " upon the express condition that said premises shall be forever held and used for the purpose of erecting and maintaining a public library building thereon," did not necessarily operate as a condition subsequent rendering the estate liable to forfeiture, but the conveyance was held to be in trust and not upon condition.

In the present case, treating the conveyance as one to the society as trustees in fee simple, and regarding the language immediately preceding the formal *habendum* as a declaration of the trust upon which the conveyance was made, full effect is given to all the language of the deed.  The society as trustees were bound to use the land for the purposes of the trust.  Whether, if necessary, a court of equity could have authorized the sale of the land and the investment of the proceeds is not now material.  If by lapse of time or for other reasons the trustees could no longer apply the subject of the trust to any purpose within the intention of the donor, their title as trustees would not be defeated, but they would hold the trust property, not for their own benefit, but for the grantor's heirs as a resulting trust.  *Easterbrooks* v. *Tillinghast*, 5 Gray 17 ; *Hopkins* v. *Grimshaw*, 165 U. S. 342, 355 ; 1 Per. Tr., *ss*. 159, 160.  Upon this construction of the deed, at the time of the taking the possession of the land and the entire legal title were in the society.  They were the owners from whom the land was taken.  The plaintiff had no possession or ownership of the land.  The possibility that at some time a trust might result for his benefit in the subject of the trust did not make him an owner

of the land, or give him any present right to its value or any part of it.

But it is not necessary to decisively determine the effect of Stephen's deed. On either view taken by counsel, the result is the same. The defendants interpret the deed as giving to the society an estate upon condition subsequent that they should occupy the land with their house of public worship, their title being liable to be defeated by breach of the condition and entry by the grantor or his heir. The plaintiff contends that the deed created in the society " what is technically known as a base, qualified, or determinable fee," which determined when the society ceased to occupy the land with a house of public worship. He concedes that if the society held the land upon condition subsequent, the further compliance with the condition being prevented by act of the law, the society would hold the land discharged of the condition, and that he has no interest for which damages could be awarded. *Scovill* v. *McMahon*, 62 Conn. 378,—21 L. R. A. 58. This case upon which the concession is based does not, however, require it. In that case there was a conveyance of land upon the express condition that it should be used for a burial ground and for no other purpose. Subsequently the legislature forbade its further use for such purpose, and further provided that upon petition of the city the court might order the removal of the bodies and monuments from the cemetery, and that upon payment to the owners of the sums decreed as the value of their interests the same should become a public park. In answer to the claim of the grantor's heirs, it was held that if the plaintiffs' property had been taken by the state, it was taken by the act forbidding the use of the ground as a burial place, which destroyed the condition of the deed and rendered the grantees' title absolute; that the destruction of the plaintiffs' possibility of reverter in the exercise of the police power was not a taking for public use, and that they were not entitled to share in the damages for the subsequent taking of the land for public use because their right had already been extinguished. The case is not in point.

The terms qualified, base, and determinable have been used " promiscuously" as descriptive of the estate claimed to have been created by this deed, though determinable is perhaps most accurate. Such a fee is an estate limited to a person and his heirs, with a qualification annexed to it by which it is provided that it must determine whenever that qualification is at an end. *Weed* v. *Woods*, 71 N. H. 581, 584, 585; 2 Bl. Com. *109; 4 Kent *9; 1 Cru. Dig. *73; Gray Perp., s. 32. A text-writer of authority takes the position that since the statute *quia emptores* there can be no possibility of reverter remaining in a grantor other than the

sovereign upon a grant of a fee, and hence an attempt to create a determinable fee by private grant results in a fee simple absolute, unless the grant can be sustained as a gift or conveyance for charitable purposes with a possible resulting trust to the grantor and his heirs upon the accomplishment of the purpose, as has been suggested might be the proper construction of the deed in this case. Gray Perp., ss. 31 (3), 41 a. The logic of the argument may be unanswerable (17 Harv. Law Rev. 297, 299) and it may be demonstrated that in England, at least, the possibility of such limited fee so created is a matter resting upon the authority of text-writers, instead of upon decisions of the courts. *Collier* v. *Walters,* L. R. 17 Eq. 252; *Collier* v. *M'Bean,* 34 Beav. 426; *Poole* v. *Needham,* Yelv. 149; and cases cited in Gray Perp., s. 33. But it is clear, and in fact is conceded, that the courts of this country have at least understood determinable fees to be possible estates, and the possibility of reverter dependent thereon a valid interest. *First Univ. Society* v. *Boland,* 155 Mass. 171, 174, 175; Gray Perp., s. 40 (2 a). In this state, in addition to *Weed* v. *Woods, supra,* the existence of such interests are referred to by Judge *Ladd* in *Reed* v. *Hatch,* 55 N. H. 327, 338, and by *Bell,* C. J., in *Worster* v. *Company,* 41 N. H. 16, 22. In *Wood* v. *County,* 32 N. H. 421, it would appear from the statement of facts that a possibility of reverter upon a determinable fee had been upheld in an earlier decision in the case which was never reported. From memoranda in 18 Notes Supreme Court 407, 456, it is clear there was no consideration of the question raised by Gray.

Since if the contention of Professor Gray is sound it would dispose of the position upon which the plaintiff has rested his case, the question is presented and in the absence of any discussion in the reports might properly be now examined. But it has not been thought necessary to undertake the discussion; for, conceding the validity of the interest claimed for the plaintiff, such interest is not of a character to entitle him to damages. The proprietor of a determinable fee so long as the estate in fee remains, till the contingency upon which the estate is limited occurs, has all the rights and privileges over it that he would have if tenant in fee simple. After such a grant no right of seisin or possession remains in the grantor; all the estate is in the grantee notwithstanding the qualification. The only practical distinction between a right of entry for breach of a condition subsequent and a possibility of reverter upon a determinable fee is that in the former the estate in fee does not terminate until entry by the person having the right, while in the latter the estate reverts at once upon the occurrence of the event by which it is limited. *Walsingham's Case,* Plow. 557; *Jamaica Pond Corp.* v. *Chandler,* 9 Allen, 159, 168, 169;

*First Univ. Society* v. *Boland,* 155 Mass. 171, 174; *State* v. *Brown,* 27 N. J. Law 13; 2 Bl. Com. *109, note; Cru. Dig., *tit.* 1, *s.* 80; 4 Kent *10; 1 Wash. R. P. (6th ed.), *ss.* 164, 165; Gray Perp., *ss.* 31 (3), 32.

Whether the plaintiff's right is a possibility of reverter upon a determinable fee, or a right of entry for breach of a condition subsequent, he had when the land was taken no right to the land and no possession of it. "Wherever the gift is of a fee, there cannot be a remainder, although the fee may be a qualified or determinable one. The fee is the whole estate. When once granted, there is nothing left in the donor but a possibility or right of reverter, which does not constitute an actual estate. . . . All the estate vests in the first grantee, notwithstanding the qualification annexed to it." *Brattle-Square Church* v. *Grant,* 3 Gray 142, 150. Whether the event upon which the plaintiff might come into ownership of the land would ever happen was mere speculation. There was no method by which the value of the interest could be assessed which would rise above the dignity of a guess. The plaintiff did not own the land taken. He was not an owner in fee, in reversion, or in remainder. He had no subsisting title in the land, but only a possibility that it might revert to him by the happening of the event upon which the estate of the society was determinable. "He is not, within the meaning of the act under which these proceedings are instituted, a person or corporation whose land is taken by the respondent. His possibility of interest is too remote and contingent to be the subject of an estimate of damages by a jury." *Chandler* v. *Corporation,* 125 Mass. 544, 547. The case quoted from is the only decision found apparently exactly in point. Somewhat analogous, however, are the decisions in this state that a mortgagee not in possession is not entitled to notice or an assessment of damages (*Parish* v. *Gilmanton,* 11 N. H. 293; *Rigney* v. *Lovejoy,* 13 N. H. 247, 251; *Gurnsey* v. *Edwards,* 26 N. H. 224, 230; *Orr* v. *Hadley,* 36 N. H. 575, 579), which proceed upon the ground that until the mortgagee has entered under his mortgage the mortgagor is the owner of the land. It is also held that damages are not assessable for an inchoate right of dower when land is taken by eminent domain, because such inchoate right is not an estate in the land. *Flynn* v. *Flynn,* 171 Mass. 312; *Venable* v. *Railway,* 112 Mo. 103,—18 L. R. A. 68. Another reason given is that such an interest is too uncertain to admit of compensation. Mills Em. Dom. (2d ed.), *s.* 71.

Reliance has been placed upon the conclusions of the referee in *In re Brick Presbyterian Church,* 4 Brad. 503; and his division between the vault-owners in the churchyard and the church of the

damages awarded for land taken for a street has been suggested as proper to be followed as between the plaintiff and the society. But there is no similarity in law or fact between the two cases. As between the vault-owners and the church, each owned a fee simple. The fee was determinable, if at all, only as between the church and their grantor. The vault-owners owned a perpetual right, as against the church, below the surface of the ground where the burial vaults were situated. The church owned the fee above the surface of the ground. Each party owned a portion of the "aggregation of qualified privileges" which constitutes property in land. *Thompson* v. *Company*, 54 N. H. 545, 551. Each had a right to the possession, to the extent of his ownership. If the title of the vault-owners was a base fee,—a proposition at least open to doubt,—so was that of the church. *In re Brick Presbyterian Church*, 3 Edw. Ch. 155, 169. The division of the damages between the two owners of a similar fee was merely the estimation of the value of the qualified privileges belonging to each. The assessment was not an appraisal of the value of a determinable fee and a possibility of reverter, because there was no such division of interest between the parties interested. The case is inapplicable.

In this state, upon a taking for public use under the statutes upon which this proceeding is founded, all that is taken is the right to use for the public purpose. The owner retains the right to use the premises for any purpose not inconsistent with the public right. *Bigelow* v. *Whitcomb*, 72 N. H. 473; *Bailey* v. *Sweeney*, 64 N. H. 296; *Winchester* v. *Capron*, 63 N. H. 605; *Blake* v. *Rich*, 34 N. H. 282; *Baker* v. *Shephard*, 24 N. H. 208, 218. If the legislature has power to authorize the taking of the fee, as has been held elsewhere, the construction of the statute as to highways and railroads in the cases cited is conclusive such power has not been exercised. As the damages are assessed upon the basis of a perpetual easement (*Peirce* v. *Somersworth*, 10 N. H. 369), in case of the public use for a park or library lot, the practical difference while the use lasts between taking an easement and a fee may be infinitesimal; but since the fee is not taken, a discontinuance of the public use vests the whole estate in the original owner. *Cheshire Turnpike* v. *Stevens*, 10 N. H. 133, 137; *Hampton* v. *Coffin*, 4 N. H. 517, 518, 519. That it was understood that the nature of the title acquired by the taking of land for a park was the same as in case of highways is shown by the statutory provisions for the discontinuance of a public cemetery, park, or common and the assessment of damages to any person specially injured thereby in the same manner that special damages are assessed in case of the discontinuance of a highway. P. S., *c.* 51, *ss.* 3, 7; *Page* v. *Symonds*, 63 N. H. 17, 21. The state has taken

the use of the land. As the society owned the use, the taking must have been from the society and not from the plaintiff, who had no right to the use. Whether the plaintiff's possibility of reverter dependent upon a cessation of the public use, should the estate then come to him, is more or less valuable than his similar right upon the cessation of the religious use of the society, is plainly a possibility upon a possibility—a matter too indefinite and vague for pecuniary estimation. Whether upon a cessation of the public use the right to use would revert to the society, or the estate (assuming the validity of its determinable character) would at once vest in the plaintiff, is a question upon which discussion would be useless. If the fee of the society has not been taken, the title must revert to them, and the plaintiff's interest, whatever it is, remains absolutely unimpaired. If the title of the society is gone, then upon expiration of the public use the estate would at once revert to the plaintiff, and it is impossible to say whether he has been damnified or benefited by the taking from the society. Whatever interest the plaintiff may have, or whatever its correct technical definition, he has no interest which entitles him to appeal, and he cannot complain of the judgment allowing him one dollar.

*Exception overruled.*

All concurred.