### TOWN OF WINCHESTER ET AL.
*vs.*
### WILLIAM J. COX,
### STATE HIGHWAY COMMISSIONER

Superior Court      Litchfield County      File No. 10004

MEMORANDUM FILED MAY 23, 1941.

*Gross, Hyde & Williams,* of Hartford, for the Plaintiffs.

*Francis A. Pallotti,* Attorney General, and *Leo V. Gaffney,* Assistant Attorney General, of Hartford, for the Defendant.

McEVOY, J.   This is an appeal from an award of nominal damages made by the Highway Commissioner in the taking of certain lands for State highway purposes.

The plaintiff Town of Winchester is the record owner. The other plaintiffs claim as grantors and as representatives of grantors who conveyed to the town.

It is the interest of the owner, Town of Winchester, which is being taken.   While the town is owner yet, by its deed, its ownership is limited to use for a park.

The consideration for the deeds from the grantors to the Town of Winchester appears in various deeds as follows:

A. In the deed dated March 14, 1934, from Dudley L. Vaill and Mary E. V. Alcott, which conveyed part of the land in question, the consideration for the deed was recited as "the agreement of the Town of Winchester to forever maintain the land herein described as a park."

B. The same expression was used in a deed from Vaill alone on that same day, which conveyed another portion of the land involved in this appeal.

C. By deed dated September 22, 1926, Vaill alone conveyed the rest of the land here involved reciting that the land conveyed was "to be forever used as a public park."

The grantee in each case was one of the appellants, the Town of Winchester.

In no one of these deeds was there any provision for reverter in case of failure on the part of the grantee to perform.

The Town of Winchester maintained and used the land as a public park until the time of its taking by the Highway Commissioner.

The value of all of these parcels, without any restrictions upon their use, was the amount found by the referee, i.e. $4,800.

As found by the referee, the land has now no value for park purposes and its only value is a nominal value.

The parties designate this action as an "Appeal" and themselves as "your applicants."

In paragraph 1 of their complaint, these plaintiffs allege that "the defendant highway commissioner filed.... an appraisal of damages and assessment of benefits made by him pursuant to the provisions of the statute authorizing him to do so...." The only prayer or claim for relief is as follows: "Wherefore, your applicants appeal from said appraisal and damages and pray the Court to re-appraise the damages on account of said highway improvement."

Since these applicants—appellants—expressly allege that the defendant Highway Commissioner acted "pursuant to the provisions of the statute" and, also, that these statutes authorize the defendant commissioner to so act, and since the claim is that these applicants appeal and since they further pray that the court reappraise the damages, it clearly appears that these applicants are engaged in a statutory appeal from the doings of the commissioner in proceeding under the provisions of the specific statute, and that their claims for redress or relief are limited to those which may be secured under the provisions of and in accordance with the procedure prescribed by the statutes as defined in the interpretive decisions.

Since this action is a statutory appeal proceedings must be had in accordance with the terms and provisions of the controlling statutes. "Upon the appeal authorized by statute, which is merely to secure a reassessment of benefits and damages, no question of the validity of the proceedings can be raised." *Munson vs. MacDonald, Highway Commissioner,* 113 Conn. 651, 660, citing *Young vs. West Hartford,* 111 Conn. 27, where, at page 30, it was said: "The appellant, having appealed from the assessment to the Superior Court, is in no position to contend that the whole proceedings were void."

In the *Munson* case our Supreme Court further said: "Both because of the nature of the proceedings by the appeal and the impropriety of suing the highway commissioner in his representative capacity, the trial court should not have passed upon the claims stated in this proceeding other than such as are involved in the appeal itself." *Munson vs. MacDonald, Highway Commissioner, supra,* 660.

"The assessment made by the commissioner constitutes but a formal offer to the landowner, which he may or may not accept, as a step toward payment by the State if he does accept and to the institution of proceedings in court if he does not." Id. 657.

Section 1528 of the General Statutes, Revision of 1930, provides that the owner of land shall be paid by the State for all damages and that the clerk of the court "shall give notice of such assessment to each owner of land."

Section 1529 provides for payment to the owner and that the amount of benefits assessed shall constitute a lien upon the land "until the amount thereof shall have been paid by the owner."

It would be an interesting speculation as to what would have followed had the court, in this appeal, assessed benefits with the resulting lien and the resultant demand upon the grantors, and their representatives, for payment of the assessed benefits.

Section 1531 provides that "any person, claiming to be aggrieved....may....apply....for a re-assessment of.... damages or....benefits."

That section also provides that the referee, to whom the matter has been referred, shall give at least ten days' notice of the proposed hearing to the parties interested. The second last sentence of this section comes back to the final use of the word owner by providing that "if the report be accepted, such assessment shall be conclusive upon such owner and the state."

No one of the pertinent sections of these statutes contains any provision for any determination of the relative rights of interested persons who may claim reverter interests in the land so taken.

It is found by the referee that, if the grantors and their representatives had owned this land when it was taken by the State, they would have been entitled to receive $4,800 in damages. Upon the whole report of the referee that conclusion would inevitably follow.

Where land was donated to a religious society as trustee to be used for a religious purpose, and the society became the owner of the land subject to a resulting trust in favor of the donor or his heirs on the property ceasing to be used for such purpose, the heir of the donor had no possession or ownership of the land, and he was not entitled to compensation for the taking of the land for a public use. *Lyford vs. Laconia,* 75 N.H. 220, 72 Atl. 1085.

Where the state took only the use of land in the possession of a religious society under a gift giving the land to the society for a specified religious use with reverter to the grantor and his heirs on the termination of such use, the taking was from the society only, and not from the heir of the donor, and the heir could not demand damages for the taking; his rights being too uncertain. *Lyford vs. Laconia, supra.*

It should be observed that in that case there was a reverter to the grantor and his heirs upon the termination of use.

A "determinable fee" is an estate limited to a person and his heirs with a qualification annexed to it by which it is provided that it must determine whenever that qualification is at an end, and so long as the estate in fee remains the proprietor has the rights and privileges of a tenant in fee simple, and no right of seisin or possession remains in the grantor, and the only practical distinction between "a right of entry for breach of condition subsequent" and a "possibility of reverter" on a determinable fee is that in the former the estate in fee does not terminate until entry by the person having the right, while in the latter the estate reverts at once on the occurrence of the event by which it is limited. *Lyford vs. Laconia, supra.*

A person possessing a possibility of reverter on a determinable fee or a right of entry for breach of conditions subsequent was not an owner in fee in reversion or in remainder within the meaning of the public statute relevant thereto, relating to the taking of land for public use and requiring notice

to the tenants for life or years and the owners of the remainder or reversion.   *Lyford vs. Laconia, supra.*

Under the statutes in that case, there was no provision for the allowance of damages except to owners of the land taken. The terms of our statute correspond in that respect since the provision is made for payment only to the owner and the provisions for appeal likewise apply to the owner.

In the *Lyford* case the deed of the land to the Congregational Society provided as follows: "Said Society to hold said premises so long as they occupy the same with a house of public worship and no longer, and when they cease to so occupy said premises then the same shall revert to me and my heirs." There is no provision for reverter in the instant deed.

In the *Lyford* case the society took possession at the date of the deed and continued to occupy the land with their house of public worship until after the land was taken by the city.

In another case, *Ashuelot National Bank vs. Keene,* 74 N.H. 148, 65 Atl. 826, where the words immediately preceding the *habendum* of the deed were "upon the express condition, that said premises shall be forever held and used for the purpose of erecting and maintaining a public library building thereon", it was held that these words did not necessarily operate as a condition subsequent rendering the estate liable to forfeiture and the conveyance was held to be in trust and not upon condition.

In the *Lyford* case, at 75 N.H. 224, 72 Atl. 1088, the Connecticut case of *Scovill vs. McMahon,* 62 Conn. 378, is cited. The *McMahon* case has an interesting background.

In the *McMahon* case it was held that if the plaintiff's property had been taken by the State, it was taken by the act forbidding the use of the ground as a burial place, which destroyed the condition of the deed and rendered the grantee's title absolute; that the destruction of the plaintiff's possibility of reverter in the exercise of the police power was not a taking for public use; and that they were not entitled to share in the damages for the subsequent taking of the land for public use because their right had already been extinguished.

In that case, by a special act of the Connecticut Legislature, approved April 26, 1882, further use of a cemetery in the

City of Waterbury for cemetery purposes was prohibited, and provisions were prescribed in the special statute for the taking of the cemetery land for park purposes and for the ascertainment of the value of the land and the payment of the value to the interested parties. Eventually the land in question was taken and is now known as Library Park, which is opposite the railroad station on Grand Street, in the City of Waterbury.

By virtue of the provisions of that special act a committee was appointed and that committee found that the ownership of land was in the Bishop of Hartford to whose predecessor in office the land had been conveyed for use as a cemetery but "in trust for the Roman Catholics of Waterbury." The committee further found as follows: "No evidence was shown to this committee that any other parties than those above recited and the town or old school society of Waterbury are the owners or proprietors of any portion of said old burial grounds." *Supreme Court Records and Briefs, Third District, June Term, 1892, to October Term, 1892.*

By virtue of the report of the committee the sum found to be the value of the land, that is $12,500, was ordered to be paid to the said bishop as the owner of the land.

Subsequently the representatives of the original grantor of the land brought an action in which the previous proceedings were recited and reciting that, under the statutory proceedings, a decree had been entered that the payment of the value of the land be made to the owner and that "no notice was given to either of said plaintiffs, by the terms of which decree said City of Waterbury was ordered to pay over forthwith the sum of $12,500 to Lawrence S. McMahon, Bishop of the Roman Catholic Diocese of Hartford, and it was decreed that when said sum and the other sums specified in said order should be paid to the parties respectively entitled thereto, and when all other orders of said Court should have been obeyed, then said old burial-ground should remain a public park." *Supreme Court Records and Briefs, supra.*

It should be observed that, in the action just cited, it was recited in paragraph 14 of the complaint that, prior to the institution of the action, one of the plaintiffs "for and in behalf of himself and the other heirs....made entry upon said land for breach of the several conditions of said deed, and

notice of said entry was forthwith given to said McMahon, Bishop as aforesaid." *Supreme Court Records and Briefs, supra.*

In that action the plaintiff filed three prayers for relief as follows:

"1. That the plaintiffs, as being the heirs of J. M. L. Scovill, deceased, may be adjudged to be the owners of said sum of $12,500, and that the defendant may be adjudged trustee thereof for and in behalf of said heirs.

"2. That the defendant may be ordered to pay over said sum of $12,500 to the plaintiffs.

"3. That this Court will inquire into the respective rights of the parties to this fund, and direct the payment thereof to them, as said interests shall appear." *Supreme Court Records and Briefs, supra.*

The condition of the deed involved in that case was as follows: "Provided, and this deed is upon the condition, that the above described premises are to be used and occupied for the purpose of a burying ground, and no other purpose; and that the grantee, his successors and assigns, shall at all times maintain, build and keep a good and sufficient fence around said premises."

It should also be observed that, in the proceedings which were had by virtue of the special statute which was passed, an order was made that notice be given to all interested parties and that such notice should be such as shall be reasonable to inquire into and ascertain "whether any other parties than the town or old school society of Waterbury are the owners or proprietors of any portion of said old burial-grounds."

In the report of the committee filed in the original proceedings taken under the special act the following appears: "The only evidence shown to the committee concerning the value of the land deeded by J. M. L. Scovill to William Tyler, May 6, 1847, was that the same is worth the sum of $12,500. I therefore find the value of said portion of said Old Burial Grounds, including all rights, interests and easements appertaining thereto, to be $12,500, and I assess the same in favor of Lawrence S. McMahon, Bishop of the Roman Catholic Diocese of Hartford, subject to all trusts, claims and interests

created and reserved in the deed of J. M. L. Scovill." *Supreme Court Records and Briefs, supra.*

The record also shows that, subsequent to the entry of the judgment rendered upon the report of the committee, a plaintiff, representative of the original grantor, filed a motion to open and amend the judgment so as to require Lawrence S. McMahon to place the sum of $12,500, received by him, with the Clerk of the Superior Court at Waterbury so that, eventually, the rights of the representatives of the original grantor and also of the owner, Bishop McMahon, might be determined and adjudicated in a subsequent action. This motion was denied. *Supreme Court Records and Briefs, supra.*

The defendant, Bishop McMahon, interposed a demurrer to the complaint brought by the Scovill heirs in a subsequent action and this demurrer reads as follows:

"The defendant demurs to the complaint, because:

"1. The condition contained in the deed from J. M. L. Scovill to William Tyler, Bishop, etc., as set out in paragraph 3 of the complaint, is not a condition of forfeiture which would in any event entitle the grantor in that deed, or his heirs, to any rights in the land therein described.

"2. No breach of the said condition is alleged on the part of the grantee or his successors, which would in law work a forfeiture of his or their title to said land under said deed.

"3. No entry for condition broken, sufficient in the law to give the plaintiff any legal right or title in or to said premises, is alleged in said complaint.

"4. It does not appear from said complaint that the defendant holds said fund under any trust for the benefit of the plaintiffs, or is under any obligation to pay over the whole or any part of said fund to the plaintiffs.

"Said complaint is insufficient in the law to entitle the plaintiffs or either of them to relief claimed." *Supreme Court Records and Briefs, supra.*

This demurrer was sustained and, from the sustaining of the demurrer, appeal was taken.

Upon the trial of that case, and upon the argument of the appeal, all the claims of the grantors and their representatives were thoroughly set out as appears in the briefs filed.

In the brief filed on behalf of the defendant, Bishop Mc-Mahon, in that case, the following claim was made: "Although the heirs of J. M. L. Scovill were represented at the hearing before the committee, by Henry W. Scovill, one of the plaintiffs in this suit, no claim was made to said committee that the heirs of said Scovill had any right or title to said premises, or to any part of the price to be paid therefor by the city of Waterbury."

In deciding the Scovill vs. McMahon case our Supreme Court used the following language (p. 391): "And that brings us to the consideration of the remaining claim of the plaintiffs, that, even if there has been no breach of the condition of the deed which would entitle them to recover the entire $12,500, yet, having, by the act of the legislature and the subsequent proceedings under it, been deprived of their interest in the land, that is, of a possibility of reverter, which, they say, was a valuable estate, they should receive some part of said fund as a compensation for their loss.

"Upon the facts disclosed by the record this claim cannot be sustained. Conceding that, by the act of the legislature, the plaintiffs' interest in the property has been destroyed, and that such interest was one which is susceptible of a valuation in money, it does not follow that they are entitled to compensation from the fund for the loss of that right or interest.

"Regarding the plaintiffs' right to re-enter upon condition broken as a species of property, that property has neither been taken nor destroyed by the conversion of this land into a public park by right of eminent domain. The purpose of the legislative act was two fold:—first, by prohibiting the use of this land as a cemetery, to remove a public nuisance; and second, to permit the city of Waterbury to take the ground for a public park."

"If the property of the plaintiffs has been taken from them by the state, it has been taken by the act prohibiting the further use of this land as a place of burial. The provision permitting the city to take the land for public purposes after it had ceased to be a burial place and could no longer be used for that purpose, did not affect the plaintiffs' rights.

"Forbidding the use of this property in a manner hurtful to the health and comfort of the community is not a taking

of the plaintiffs' property for public use within the meaning of the constitution. It was a proper and valid exercise of the police power vested in the state, and if, as a necessary result of the act of the legislature removing a public nuisance, the plaintiffs have been deprived of the right in question, they are not thereby entitled to a portion of the money in the defendant's hands." Id. pp. 392, 393.

Two definite conclusions follow from the result in the case of *Scovill vs. McMahon*:

The first is that the plaintiffs and all of the parties realized that the grantor and his representatives had no right to the fund by the provisions of the special act of the Legislature in and of itself, but that they were required to attempt to redress their grievances in a second and subsequent proceeding, which they did.

Second, that the rights of the plaintiffs, whatever they may have been, were not extinguished by the taking of the land under the claim of eminent domain but in the abolition of a nuisance and under the police power.

The first conclusion, which had to do with the disposition of the fund, is important in the instant case.

Returning to a consideration of the claimed rights of the plaintiffs under the *Lyford* case (p. 227 of 75 N.H.): "The state has taken the use of the land. As the society owned the use, the taking must have been from the society and not from the plaintiff, who had no right to the use. Whether the plaintiff's possibility of reverter dependent upon a cessation of the public use, should the estate then come to him, is more or less valuable than his similar right upon the cessation of the religious use of the society, is plainly a possibility upon a possibility—a matter too indefinite and vague for pecuniary estimation. Whether upon a cessation of the public use the right to use would revert to the society, or the estate (assuming the validity of its determinable character) would at once vest in the plaintiff, is a question upon which discussion would be useless. If the fee of the society has not been taken, the title must revert to them, and the plaintiff's interest, whatever it is, remains absolutely unimpaired. If the title of the society is gone, then upon expiration of the public use the estate would at once revert to the plaintiff, and it is impossible

to say whether he has been damnified or benefited by the taking from the society. Whatever interest the plaintiff may have, or whatever its correct technical definition, he has no interest which entitles him to appeal, and he cannot complain of the judgment allowing him one dollar."

The state law of New Hampshire which governed the decision of the *Lyford* case contained this provision (p. 221 of 75 N.H.): "If the land is taken the damages sustained by each owner of the land must be assessed, those of the tenant and remainderman being assessed separately." There is no provision for the allowance of damages except to owners of the land taken. (Id. p. 221.)

A breach of condition alone will not defeat an estate upon condition subsequent without a declaration of forfeiture by the donor or his heirs and re-entry by them, while in a conditional limitation a breach of the condition alone will defeat the estate and *ipso facto* vest it in the third party, in whom it is to vest on termination of the intermediate estate. *Green vs. Old People's Home of Chicago*, 269 Ill. 134, 143, 109 N.E. 701.

Where a bequest, upon condition subsequent that the income should be used to maintain a home for old men, vested the estate, but no valid disposition was made in case of forfeiture thereof, upon the lapse of the legacy, the heir at law, to whom it descended as the holder of the reversionary interest, could alone declare a forfeiture and maintain a bill to enforce it. Id. p. 151 of 269 Ill.

It should be observed that, in the instant case, under subdivision (5) of the appellants' claims of law, this claim appears: "The respective claims of the Town of Winchester as trustee and of the settlors of the trust fund to the eminent domain award are not in issue and cannot be adjudicated."

Reliance is had, by the applicants in the instant case, upon the case of *City National Bank vs. Bridgeport*, 109 Conn. 529. It should be observed that, in that case, real estate was conveyed to the Borough of Bridgeport, in trust, for a religious society, to be used for religious purposes, and that there was a gift over in the event that the society failed or ceased to so use it, to all such inhabitants of certain towns as should associate themselves together for the purpose of maintaining public worship, or, failing this, "then to revert back to the

use and behoof of the original grantors, their heirs and assigns."

This brings us back to the consideration that there is no express provision for reverter in any of the deeds which are the basis of the instant appeal.

In the briefs of these litigants discussion is had as to the right of the Legislature, or of the court upon the act of the Legislature, to divert land already taken for one public use to another public use. " 'The grant of land for one public use,' says Chief Justice Shaw, 'must yield to another *more urgent,*' (4 Cush., 63)." *City of Bridgeport vs. New York & New Haven R.R. Co.,* 36 Conn. 255, 265. Upon this point, citation is made of the case of *Evergreen Cemetery Association vs. City of New Haven,* 43 Conn. 234. In that case, at page 242, our Supreme Court said: "That the legislature has the power to authorize the taking of land already applied to one public use, and to devote it to another, is unquestionable....The language is general and broad enough to embrace all lands, whether used for one purpose or another; nevertheless there are cases in which it will be presumed that the legislature intended that it should not apply."

It was not decided, in that case, that land already dedicated to one public use could not be taken for another public use because: "On the contrary there is no difficulty in effecting the desired improvement by taking land on the other side of the street. On this point the finding of the committee is emphatic." Id. p. 243.

It thus appears that the decision in that case went off upon the theory that the taking of the land of the cemetery was unnecessary because it was perfectly consistent with the public good that property, upon the opposite side of the street than that of the cemetery, could readily be used for the purpose in question.

On page six of the brief of the appellants this statement appears: "If this is to be the law of this State, then we suggest that hereafter when eminent domain proceedings impend against property held upon charitable uses, as in the case at bar, the trustee must go post-haste to the Superior Court sitting in equity for a release of the restraint on alienation to prevent complete loss of the trust *res* through the application of the doctrine contended by the state."

Upon the whole record it would seem that this suggestion is pertinent to the matter at hand, not that the trustees must, necessarily, go in "post-haste" but that, upon proper proceedings, issues be tendered by pleadings comprehensive enough to permit orderly adjudication as, otherwise, there would be no basis for final judgment. "A judgment based upon facts, found by the trial court but not involved in the issue raised by the pleadings, is erroneous and cannot be upheld." Excerpt from syllabus in *Greenthal vs. Lincoln, Seyms & Co.*, 67 Conn. 372.

The record plaintiffs filed a remonstrance to the report of the referee upon the alleged ground that the report of the referee contains a ruling of law (2 [a] [b] plaintiffs' remonstrance).

A careful examination of the whole record indicates that the referee made no ruling of law but that he did make an alternative finding of fact within the purview of section 170 of the Practice Book (1934).

Under the law and the instant pleadings it would seem that these present plaintiffs, who were grantors or who are representatives of grantors to the plaintiff, Town of Winchester, have no present standing to assert, in this action, any claim for damages upon this appeal.

It is therefore found that the amount due to the plaintiff, the Town of Winchester, for the taking of the land which it held for park purposes, is $1 and that no amount is due to the other plaintiffs in this action, all of which is without prejudice to whatever rights they may have or claim to have in any other action.

Judgment may enter accordingly.